UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HARRIET HAREWOOD,

                Plaintiff,

  -against-

NEW YORK CITY DEPARTMENT OF EDUCATION; ROBERT MERCEDES, in his Official and Individual Capacity as PRINCIPAL OF MIDDLE SCHOOL 390; ANDREA VARONA, in her Official and Individual Capacity as ASSISTANT PRINCIPAL OF MIDDLE SCHOOL 390,

                Defendants.

**COMPLAINT**

18-cv-

JURY TRIAL DEMANDED

---

Plaintiff HARRIET HAREWOOD, by and through her attorneys GLASS KRAKOWER LLP, as and for her Complaint, alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff HARRIET HAREWOOD ("Plaintiff" or "Harewood"), a tenured art teacher formerly employed by the New York City Department of Education ("NYCDOE"), brings this action based on unlawful discrimination and retaliation on the basis of her age and race in violation of the federal Age Discrimination in Employment Act ("ADEA"); Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et. seq.*, the New York State Human Rights Law, N.Y. Exec Law § 296 ("NYSHRL"); the New York City Human Rights Law, N.Y.C.

Law, N.Y. Exec Law § 296 ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Administrative Code §§8-101 *et. seq.* ("NYCHRL"); and 42 U.S.C. § 1981 and § 1983, which also addresses Equal Protection violations.

## JURISDICTION AND VENUE

2.This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1331, because this action involves federal claims for age and race discrimination under the ADEA, Title VII, and 42 U.S.C. § 1981 and § 1983.

3.Venue is proper in this District pursuant to 28 U.S.C. 1391 (b) and (c) because a substantial part of the acts or omissions giving rise to this action occurred in this District and Defendants are subject to personal jurisdiction in this District.

## THE PARTIES

4.Plaintiff HARRIET HAREWOOD is a resident of the State of New York and a teacher within the school system operated by the New York City Department of Education.

5.At all times relevant herein, Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE") is a city school district established under the laws of the State of New York and Plaintiff's employer.

6.At all times relevant herein, Defendant Principal ROBERT MERCEDES was the Principal of Middle School 390 ("MS 390") in the Bronx, New York. He is sued in both his official and individual capacities. Upon information and belief of Plaintiff, Defendant Mercedes is of Dominican national origin.

7. At all times relevant herein, Defendant Assistant Principal ANDREA VARONA was the Assistant Principal of Middle School 390 ("MS 390") in the Bronx, New York. She is sued in both her official and individual capacities. Upon information and belief of Plaintiff, Defendant Varona is of Dominican national origin.

## FACTUAL ALLEGATIONS

8. Plaintiff had been an art teacher within Defendant NYCDOE at MS 390 within District 10 in the Bronx since September 1999 until June 2017, when she was constructively discharged by retiring.

9. Plaintiff is black.

10. Plaintiff is 57 years old, born February 11, 1961.

11. As of the time of her retirement, Plaintiff was one of the oldest staff member on the staff with the most seniority in the school.

12. Plaintiff consistently received "Satisfactory" and/or "Effective" and/or "Highly Effective" ratings, observations, and annual evaluations at MS 390, up until the 2015-16 school year.

13. Since the 2012-13 school year, the MS 390 administration, led by Defendant Principal Mercedes, has been targeting older and/or black teachers and other staff in favor of younger and/or Hispanic individuals.

14. During the 2012-13 school year, a number of older and/or black teachers were asked to leave the school or were pushed out. For example, a black teacher, Linda White, who co-taught a special education class with a Dominican teacher, received consistently negative ratings during the 2012-13 school year despite her Dominican counterpart receiving positive ratings. This

3

ultimately led to Ms. White leaving the school. Additionally, younger and/or Dominican teachers who were ineffectively rated were not asked to leave the school.

15. This pattern has continued since the 2012-13 school years, as Defendant Mercedes has replaced a significant percentage of the older or black staff in favor of white and/or Dominican and/or younger teachers.

16. Defendants also began targeting Plaintiff during the 2013-14 school. For years, Plaintiff had earned per session income as the morning scheduler. However, during the 2013-14 school year, Defendants took this role away from Plaintiff and gave it to a younger, Dominican individual.

17. Also during the 2013-14 school year, Plaintiff was not initially given a lunch period, which was a violation of her contractual rights. When Plaintiff complained about this to Defendant Mercedes, on or about October 2, 2013, she received an email from Defendant Mercedes falsely stating that several staff members were complaining about her. Additionally, in retaliation for Plaintiff's complaint, Defendant Mercedes changed Plaintiff's schedule so that she had 25 teaching periods, which was also a violation of her contractual rights.

18. On or about November 6, 2013, Plaintiff's professional duty—which teachers select at the beginning of the year—was changed without Plaintiff's permission.

19. Consistently throughout the 2013-14 school year, Plaintiff was denied art supplies.

20. Beginning in the 2014-15 school year, and continuing through the 2015-16 and 2016-17 school years, Plaintiff was denied the opportunity to provide afterschool per session instruction to help students prepare portfolios for specialized high schools. Previously, Plaintiff had received per session income for providing afterschool instruction to students. However,

4

beginning in the 2014-15 school year, Plaintiff no longer received per session income for this work, and provided afterschool instruction on a volunteer basis.

21. On January 15, 2015, Plaintiff was called to a meeting with Defendant Mercedes. During this meeting, Defendant Mercedes told Plaintiff, in sum and substance, that he no longer needed her at MS 390 as a teacher, and that he and the administration wanted to move forward without her. Upset by Defendant Mercedes' comments, Plaintiff left the meeting.

22. The next day, Plaintiff went to her union representative, who requested a meeting with Defendant Mercedes on behalf of Plaintiff. During the meeting that followed, Defendant Mercedes denied making the aforementioned comments.

23. Notably, other black teachers were also asked to leave the school on January 15, 2015.

24. In or around March 2015, after attending book-making professional development courses—for which she had previously received permission by Defendant Mercedes to attend—Plaintiff was denied the opportunity to develop a book-making per session class.

25. Defendants also continued to deny Plaintiff art supplies during the 2014-15 school year.

26. For example, on or about March 10, 2015, Plaintiff requested certain art supplies for her students. In response, Defendant Mercedes informed Plaintiff that the school did not have the funding for these supplies. Plaintiff knew this to be false, however, because the school had received a $1,000 grant to be used for art supplies.

27. Beginning in June 2015, Defendant Mercedes eliminated the art classroom and forced Plaintiff to push into classrooms in two different buildings with multiple floors with an art cart with limited supplies. Previously, Plaintiff had taught out of a classroom for her entire career.

28. As Plaintiff now had to carry an art cart throughout the school day to different classrooms, Plaintiff requested use of an elevator key. Defendant Mercedes denied her request.

29. In so eliminating the art classroom, Defendant Mercedes claimed that the art classroom was needed for storage and other functions, yet there were numerous other empty rooms left vacant during the entire 2015-16 and 2016-17 school years.

30. After Plaintiff submitted two doctors' notes, from October and November 2015, stating that Plaintiff has a medical condition that required her access to an elevator, Defendant Mercedes issued Plaintiff an elevator key.

31. On or about September 25, 2015, Defendant Varona observed Plaintiff eating lunch in her colleague and friend's classroom—because there was no cafeteria in the school. Several weeks later, on October 9, 2015, Plaintiff's lunch period was inexplicably changed to a different period. As a result, Plaintiff had nowhere to eat lunch, as she had no classroom and her colleagues' lunch periods were during different periods than hers.

32. Plaintiff continued to be denied art supplies throughout the 2015-16 school year.

33. In September 2016, Plaintiff had no plans to retire. Indeed, Plaintiff, as of September 2016, had no plans to retire until June 2020, when her daughter would have finished college.

34. However, over the months that followed, Defendants created a hostile work environment that forced Plaintiff to retire earlier than she wished.

35. In or around January 2016, Plaintiff began working in the GEAR UP after-school program. After securing this position for the 2016-17 school year, several weeks into the school year, without any explanation, Plaintiff was denied the opportunity after it was given to the Dominican social worker to run the program. The program was changed to a Saturday program in

lieu of an after-school program and Plaintiff was not offered an opportunity to work with the program.

36. Also beginning around Spring 2017, Plaintiff began receiving less-than-effective evaluations and her first ever disciplinary letters to file, in contrast to consistently effective evaluations and no disciplinary history in previous years.

37. Plaintiff received a less-than-effective observation from Defendant Varona on May 2, 2017 for an April 20, 2017 informal observation. When Plaintiff emailed Defendant Varona asking for feedback as to why she was rated less-than-effective—because the observation report itself contained no actual factual observations—Plaintiff received an email directing her to refer to the Danielson Rubric—which is 56 pages long—with no further specifics.

38. On May 9, 2017, Plaintiff received her first ever disciplinary letter to file based on false allegations of corporal punishment. Notably, this investigation was conducted only by Defendant Mercedes. The letter itself is riddled with falsities, such that a classroom teacher, whose class in on the other side of the building, witnessed the alleged altercation.

39. On May 16, 2017, Defendant Mercedes took away the elevator key that had been given to Plaintiff.

40. Plaintiff received a less-than-effective evaluation on May 23, 2017 for a May 19, 2017 observation that contained numerous ineffective rated components. This was the first time in 33 years that Plaintiff had ever been rated ineffective. Notably, the lesson for which Plaintiff was observed was a science lesson on which Plaintiff had collaborated with the classroom science teacher as a favor to the teacher.

41. Plaintiff subsequently grieved the May 19, 2017 observation report. Plaintiff has not received a response to this grievance.

42. On May 25, 2017, based on a recommendation from her doctor, Plaintiff requested and took a leave of absence from May 28 until June 14, 2017, due to the stress she was experiencing from the conditions at her school.

43. Plaintiff additionally had to seek physical therapy due to injuries sustained to her back from carrying the art supply cart up and down the stairs due to her elevator key being taken away.

44. On or about June 28, 2017, Defendant Mercedes issued Plaintiff an unwarranted disciplinary letter to file alleging verbal abuse. Notably, a disciplinary meeting had been scheduled for Plaintiff to meet with Defendant Varona on May 17, 2017, but was cancelled by Defendant Varona. When Plaintiff finally met with Defendant Mercedes on June 22, 2018 in regards to this allegation, he denied her the opportunity to have a copy of the disciplinary allegations.

45. Based on the harassment and discriminatory behavior of Defendant Mercedes and his administration, Plaintiff retired at the end of the 2016-17 school year.

46. Plaintiff has been constructively discharged and has suffered damages as a result of the discrimination, including out of pocket medical expenses, and other potential per session opportunity losses.

47. Plaintiff filed a dual filed complaint with the New York State Division of Human Rights ("SDHR") and the Equal Employment Opportunity Commission ("EEOC") based on age and race discrimination on or about July 11, 2017, and requested and received a right to sue letter from the EEOC dated April 12, 2018, a copy which is annexed as Exhibit A.

48. After filing her complaint with the SDHR and EEOC, on Saturday, May 12, 2018, Plaintiff received a letter from Defendant Mercedes asking her to come to the school for a meeting

8

regarding another allegation of corporal punishment and professional misconduct, despite the fact that Plaintiff was retired as of June 2017.

## FIRST CLAIM FOR RELIEF

### (Claims for Violation of Title VII—Discrimination and Retaliation Based on Race Against Defendant NYCDOE)

49.     Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

50.     Defendant NYCDOE, through the aforementioned conduct, have violated Title VII of the Civil Rights Act of 1964, by discriminating and retaliating against Plaintiff based on her race and/or constructively discharging her.

## SECOND CLAIM FOR RELIEF

### (Claims for Violation of 42 USC Section 1981 and 1983 — Discrimination and Retaliation Based on Race Against All Defendants)

51.     Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

52.     Defendants, through the aforementioned conduct, have violated Sections 1981 and 1983, by discriminating and retaliating against Plaintiff based on her race and/or constructively discharging her.

## THIRD CLAIM FOR RELIEF

### (Claims for Violation of the ADEA — Discrimination and Retaliation Based on Age Against Defendant NYCDOE)

53.     Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

54. Defendant NYCDOE, through the aforementioned conduct, has violated the ADEA by discriminating and retaliating against Plaintiff based on her age and/or constructively discharging her.

## FOURTH CLAIM FOR RELIEF

### (Claims for Violation of New York State Human Rights Law — Discrimination and Retaliation Based on Race and Age against All Defendants)

55. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

56. Defendants, through the aforementioned conduct, have violated the New York State Human Rights Law, by discriminating against Plaintiff based on her race and age and/or constructively discharging her.

## FIFTH CLAIM FOR RELIEF

### (Claims for Violation of New York City Human Rights Law — Discrimination and Retaliation Based on Race and Age against All Defendants)

57. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

58. Defendants, through the aforementioned conduct, have violated the New York City Human Rights Law, by discriminating against Plaintiff based on her race and age and/or constructively discharging her.

## JURY DEMAND

Plaintiff demands a trial by a jury on all of the triable issues of this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for declaratory relief and damages as follows:

A. A declaratory judgment that Defendant NYCDOE is in violation of federal Title VII of the Civil Rights Act of 1964;

B. A declaratory judgment that Defendants are in violation of federal 42 U.S.C. Sections 1981 and 1983;

C. A declaratory judgment that Defendant NYCDOE is in violation of federal ADEA;

D. A declaratory judgment that Defendants are in violation of the New York State Human Rights Law;

E. A declaratory judgment that Defendants are in violation of the New York City Human Rights Law;

G. Awarding Plaintiff compensatory damages (including but not limited to emotional distress damages) and punitive damages (to the extent available) pursuant to Title VII, the ADEA, 42 USC Sections 1981 and 1983, the New York State Human Rights Law, and the New York City Human Rights Law;

H. Awarding Plaintiff costs and reasonable attorneys' fees; and

I. Such other and further relief as to this Court may deem necessary, just and proper.

Dated:   New York, New York
         June 18, 2018

                              **GLASS KRAKOWER LLP**
                              Attorneys for Plaintiff
                              100 Church Street, 8th Floor, Suite 800
                              New York, NY 10007
                              (212) 537-6859

                              By: _____s/_____
                                    Bryan D. Glass, Esq.