18 CV 5487 (RWS)(KHP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HARRIET HAREWOOD,

                  Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
ROBERT MERCEDES, in his Official and Individual Capacity as
PRINCIPAL OF MIDDLE SCHOOL 390, ANDREA VARONA,
in her Official and Individual Capacity as ASSISTANT
PRINCIPAL OF MIDDLE SCHOOL 390,

                  Defendants.

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

### GLASS & HOGROGIAN LLP

Attorneys for Plaintiff
85 Broad Street, 18th Floor @ Wework
New York, NY 10004

Bryan D. Glass, Esq.
Tel: 212-537-6859
bglass@ghnylaw.com

Served October 19, 2018

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

ARGUMENT……..............................................................................................................8

POINT I

THE COMPLAINT PLEADS MORE THAN ADEQUATE VALID RACE
AND AGE DISCRIMINATION CLAIMS UNDER TITLE VII AND THE ADEA ......... 8

POINT II

THE COMPLAINT HAS PLED MORE THAN ADEQUATE VALID RACE
DISCRIMINATION AND RETALIATION CLAIMS UNDER 42 USC SECTION
1981...................................................................................................................................14

POINT III

THE COMPLAINT HAS PLED MORE THAN ADEQUATE VALID RACE AND AGE
DISCRIMINATION CLAIMS UNDER THE NEW YORK STATE AND NEW YORK
CITY HUMAN RIGHTS LAW........................................................................................15

CONCLUSION…….........................................................................................................15

## TABLE OF AUTHORITIES

<u>Cases:</u>

<u>Anderson v. City of New York,</u>
 2017 U.S. Dist. LEXIS 8358 (SDNY 2017) .................................................................. 12-13

<u>Browne v. CUNY,</u>
 419 F.Supp.2d 315 (EDNY 2005), *aff'd sub nom.*, 2012 Fed. Appx. 523 (2d Cir. 2006) ....... 10

<u>Burlington Northern & Santa Fe Railway v. White,</u>
 543 U.S. 53 (2006) .............................................................................................................. 13

<u>Collins v. City of New York,</u>
 156 F.Supp.3d 448 (SDNY 2016) ...................................................................................... 15

<u>Crady v. Liberty Nat'l Bank and Trust Co.,</u>
 993 F.2d 132 (7th Cir. 1993) ................................................................................................ 9

<u>Fields v. N.Y. State Office of Mental Retardation and Developmental Disabilities,</u>
 115 F.3d 116 (2d Cir. 1997) ............................................................................................... 11

<u>Fincher v. Depository Trust & Clearing Corp.,</u>
 604 F.3d 712 (2d Cir. 2010) ............................................................................................... 13

<u>Fisher v. Vassar College,</u>
 114 F.3d 1332 (2d Cir. 1997) ............................................................................................. 11

<u>Gallagher v. Delaney,</u>
 139 F.3d 338 (2d Cir. 1998) ............................................................................................... 11

<u>Giscombe v. NYCDOE,</u>
 2013 WL 82917 (SDNY 2013) .......................................................................................... 14

<u>Graham v. LIRR,</u>
 230 F.3d 34 (2d Cir. 2000) ................................................................................................... 9

<u>Hausdorf v. NYCDOE,</u>
 2018 U.S. Dist. LEXIS 13330 (SDNY 2018) ................................................................ 2, 13

<u>Herling v. New York City DOE,</u>
 2014 U.S. Dist. LEXIS 56442 (EDNY 2014) .................................................................... 10

<u>Hongyan Lu. v. Chase Inv. Servs. Corp.,</u>
 412 Fed. Appx. 413 (2d Cir. 2011) ...................................................................................... 9

<u>Littlejohn v. City of New York,</u>
 2015 U.S. Dist. LEXIS 13475 (2d Cir. 2015) .................................................................... 11

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973) .................................................................................................... 9

Richardson v. New York State Dep't of Correctional Serv.,
    180 F.3d 426 (2d Cir. 1999) ....................................................................................... 9

Sank v. CUNY,
    2011 WL 5120668 (SDNY 2011) ............................................................................ 15

Sealy v. Hertz Corp.,
    688 F.Supp.2d 247 (SDNY 2009) ............................................................................ 10

Shumway v. UPS, Inc.,
    118 F.3d 60 (2d Cir. 1997) ....................................................................................... 11

Stratton v. Dep't for the Aging for the City of New York,
    132 F.3d 869 (2d Cir. 1997) ..................................................................................... 11

Tolbert v. Smith,
    790 F.3d 427 (2d Cir. 2015) ..................................................................................... 11

Wanamaker v. Columbian Rope Co.,
    108 F.3d 462 (2d Cir. 1997) .................................................................................. 9-10

White v. Roosevelt Union Free School District,
    15 CV 1035 (JS) (EDNY 2017) ....................................................................... 2, 13,14

Williams v. Board of Education-City of Buffalo,
    2008 WL 2946003 (WDNY 2008) ........................................................................... 14

Williams v. Regus Management Group, LLC
    836 F.Supp.2d 159 (SDNY 2011) ............................................................................ 15

Woodman v. WWOR-TV, Inc.
    411 F.3d 69 (2d Cir. 2005) ......................................................................................... 9

Zelnik v. Fashion Institute of Technology,
    464 F.3d 217 (2d Cir. 2006) ..................................................................................... 13

Zimmerman v. Associates First Capital Corp.,
    251 F.3d 376 (2d Cir. 2001) ..................................................................................... 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HARRIET HAREWOOD,

                Plaintiff,

                          **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

      -against-                      18-cv-5487 (RWS)

NEW YORK CITY DEPARTMENT OF
EDUCATION; ROBERT MERCEDES, in his
Official and Individual Capacity as PRINCIPAL
OF MIDDLE SCHOOL 390; ANDREA
VARONA, in her Official and Individual
Capacity as ASSISTANT PRINCIPAL OF
MIDDLE SCHOOL 390,

                Defendants.

---

## PRELIMINARY STATEMENT

Plaintiff HARRIET HAREWOOD ("Plaintiff" or "Harewood"), a long-term tenured art teacher formerly employed by the New York City Department of Education ("NYCDOE"), submits this memorandum of law in response to Defendants' motion to dismiss the complaint in this action.

This action was commenced pursuant to the federal Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, and 42 U.S.C. Section 1981 and 1983 for discrimination and retaliation based on Plaintiff's race/color (black).

1

Defendants' motion to dismiss is premature at this juncture and should be denied, as Ms. Harewood has stated a valid claim of discrimination and retaliation under the ADEA and Title VII and 42 U.S.C. Section 1981 and 1983, and the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

Defendants' motion has reached far beyond what is appropriate for a motion to dismiss, and motions of this type against teachers have been routinely denied at this early stage of litigation. *See Hausdorf v. NYCDOE*, 17 CV 2115 (PAE)(SN) (S.D.N.Y. 1/25/18); *White v. Roosevelt Union Free School District*, 15 CV 1035 (JS)(SIL) (E.D.N.Y. 12/20/17). Defendants spend much of their motion brief arguing about facts that will be developed in discovery and trial. Defendants also rely on documents outside the pleadings that are not appropriate for purposes of a motion to dismiss. Therefore, Defendants' motion to dismiss should be denied, and this matter should be promptly scheduled for pretrial discovery and an eventual trial.

If the Court is inclined to find that any further factual pleadings are necessary before proceeding to discovery, Ms. Harewood respectfully requests leave to file an amended complaint.

## STATEMENT OF FACTS

Plaintiff Harriet Harewood was employed as an art teacher by Defendant NYCDOE at MS 390 within District 10 in the Bronx, New York from September 1999 until June 2017, after which point she was constructively discharged by retiring from her position following a period of ongoing harassment by her school administration. Complaint ("Compl.") ¶ 8. Ms. Harewood is black and 57 years old, born February 11, 1961. *Id.* ¶ 9-10. At the time of her retirement, she was one of the oldest staff members with the most seniority in the school. *Id.* ¶ 11.

Ms. Harewood consistently received "Satisfactory" and/or "Effective" and/or "Highly Effective" ratings, observations, and annual evaluations at MS 390, up until the 2015-16 school year. *Id.* ¶ 12. Since the 2012-13 school year, the MS 390 administration, led by Defendant Principal Mercedes, has been targeting older and/or black teachers and other staff in favor of younger and/or Hispanic individuals. *Id.* ¶ 13.

### 2012-13 School Year

During the 2012-13 school year, a number of older and/or black teachers were asked to leave the school or were pushed out by Principal Mercedes and his administration. *Id.* ¶ 14. For example, Linda White, a black teacher who co-taught a special education class with a Dominican teacher, received consistently negative ratings during the 2012-13 school year despite her Dominican counterpart receiving positive ratings. *Id.* This ultimately led to Ms. White leaving the school. Additionally, younger and/or Dominican teachers who were ineffectively rated were not asked to leave the school. *Id.* This pattern has continued since the 2012-13 school year, as Principal Mercedes has replaced a significant percentage of the older or black staff in favor of white and/or Dominican and/or younger teachers. *Id.* ¶ 15.

### 2013-14 School Year

Principal Mercedes and his administration also began targeting Ms. Harewood during the 2013-14 school year. *Id.* ¶ 16. For years, Ms. Harewood had earned per session income as the morning scheduler for the school. *Id.* However, during the 2013-14 school year, the school administration took this position away from Ms. Harewood and reassigned it to a younger, Dominican individual. *Id.*

During the 2013-14 school year, Ms. Harewood was not initially given a lunch period, which was a violation of her contractual rights under the UFT-DOE contract. *Id.* ¶ 17. When Ms.

3

Harewood complained about this to Principal Mercedes, on or about October 2, 2013, she received an email from Principal Mercedes falsely stating that several staff members were complaining about her. *Id.* Additionally, in retaliation for Ms. Harewood's complaint, Principal Mercedes changed Ms. Harewood's schedule so that she had 25 teaching periods, which was also a violation of her UFT-DOE contractual rights. *Id.*

On or about November 6, 2013, Ms. Harewood's professional duty—which teachers select at the beginning of the year—was changed without her permission. *Id.* ¶18. Consistently throughout the 2013-14 school year, Ms. Harewood was denied art supplies. *Id.* ¶ 19.

### 2014-15 School Year

Beginning in the 2014-15 school year, and continuing through the 2015-16 and 2016-17 school years, Ms. Harewood was denied the opportunity to provide afterschool per session instruction to help students prepare portfolios for specialized high schools. *Id.* ¶ 20. Previously, Ms. Harewood had received per session income for providing afterschool instruction to students. *Id.* However, beginning in the 2014-15 school year, Ms. Harewood no longer received per session income for this work, and provided afterschool instruction on a volunteer basis. *Id.*

On January 15, 2015, Ms. Harewood was called to a meeting with Principal Mercedes. *Id.* ¶ 21. During this meeting, Principal Mercedes told Ms. Harewood, in sum and substance, that he no longer needed her at MS 390 as a teacher, and that he and the administration wanted to move forward without her. *Id.*

The next day, Ms. Harewood went to her union representative, who requested a meeting with Principal Mercedes on behalf of Ms. Harewood. *Id.* ¶ 22. During the meeting that followed, Defendant Mercedes denied making the comments. *Id.* Notably, other black teachers were also asked to leave the school on January 15, 2015. *Id.* ¶ 23.

4

In or around March 2015, after attending book-making professional development courses—for which she had previously received permission by Principal Mercedes to attend—Ms. Harewood was denied the opportunity to develop a book-making per session class. *Id.* ¶ 24. The school administration also continued to deny Ms. Harewood art supplies during the 2014-15 school year. *Id.* ¶ 25. For example, on or about March 10, 2015, Ms. Harewood requested certain art supplies for her students. *Id.* ¶ 26. In response, Principal Mercedes informed Ms. Harewood that the school did not have the funding for these supplies. *Id.* Ms. Harewood knew this to be false, however, because the school had received a $1,000 grant to be used for art supplies. *Id.*

### 2015-16 School Year

Beginning in June 2015, Principal Mercedes eliminated the art classroom and forced Ms. Harewood to push into classrooms in two different buildings with multiple floors with an art cart with limited supplies. *Id.* ¶ 27. Previously, Ms. Harewood had taught out of a classroom for her entire career. *Id.* As Ms. Harewood now had to personally carry an art cart throughout the school day to different classrooms, Ms. Harewood requested use of an elevator key. *Id.* Principal Mercedes denied her request. In so eliminating the art classroom, Principal Mercedes claimed that the art classroom was needed for storage and other functions, yet there were numerous other empty rooms left vacant during the entire 2015-16 and 2016-17 school years. *Id.* ¶ 29. After Ms. Harewood submitted two doctors' notes, from October and November 2015, stating that she has a medical condition that required her access to an elevator, Principal Mercedes finally issued Ms. Harewood an elevator key. *Id.*

On or about September 25, 2015, Assistant Principal Varona observed Ms. Harewood eating lunch in her colleague and friend's classroom—because there was no cafeteria in the school. *Id.* ¶ 31. Several weeks later, on October 9, 2015, Ms. Harewood's lunch period was inexplicably

5

changed to a different period. *Id.* As a result, Ms. Harewood had nowhere to eat lunch, as she had no classroom and her colleagues' lunch periods were during different periods than hers. *Id.* Ms. Harewood continued to be denied art supplies throughout the 2015-16 school year. *Id.*

### 2016-17 School Year

Ms. Harewood, as of September 2016, had no plans to retire until June 2020, when her daughter would have finished college. *Id.* ¶ 33

However, over the months that followed in the 2016-17 school year, the school administration created and started such a toxic and hostile work environment that Ms. Harewood felt compelled to retire much earlier than she had planned. *Id.* ¶ 34. In or around January 2016, Ms. Harewood began working in the GEAR UP after-school program. *Id.* ¶ 35. After securing this position for the 2016-17 school year, several weeks into the school year, without any explanation, Ms. Harewood was denied the opportunity to work in the program after it was given to a Dominican social worker to run the program. *Id.* ¶ 35. The program was changed to a Saturday program in lieu of an after-school program and Ms. Harewood was not offered an opportunity to work with the program. *Id.*

Also beginning around Spring 2017, Ms. Harewood began receiving less-than-effective evaluations and her first ever disciplinary letters to file, in contrast to consistently effective evaluations and no disciplinary history in previous years. *Id.* ¶ 36. Ms. Harewood received a less-than-effective observation from Assistant Principal Varona on May 2, 2017 for an April 20, 2017 informal observation. *Id.* ¶ 37. When Ms. Harewood emailed AP Varona seeking feedback as to why she was rated less-than-effective—because the observation report itself contained no actual factual observations—Ms. Harewood merely received an email directing her to refer to the Danielson Rubric—which is 56 pages long—with no further specifics. *Id.*

6

On May 9, 2017, Ms. Harewood received her first ever disciplinary letter to file based on false allegations of corporal punishment. *Id.* ¶ 38. Notably, this investigation was conducted only by Principal Mercedes. *Id.* The disciplinary letter itself is riddled with falsities, such that a classroom teacher, whose class is on the other side of the building, witnessed the alleged altercation. *Id.*

On May 16, 2017, Principal Mercedes took away the elevator key that had been given to Ms. Harewood with no explanation. *Id.* ¶ 39. The hostile work environment continued when Ms. Harewood received a less-than-effective evaluation on May 23, 2017 for a May 19, 2017 observation that contained numerous ineffective rated components. *Id.* ¶ 40. This was the first time in 33 years that Ms. Harewood had ever been rated ineffective. *Id.* Notably, the lesson for which Ms. Harewood was observed was a science lesson on which Ms. Harewood had collaborated with the classroom science teacher as a favor to the teacher. *Id.* ¶ 40. Ms. Harewood subsequently grieved the May 19, 2017 observation report. *Id.* ¶ 41. Ms. Harewood, to date, has not received a response to this grievance. *Id.*

On May 25, 2017, based on a recommendation from her doctor, Ms. Harewood requested and was approved for a leave of absence from May 28 until June 14, 2017, due to the stress she was experiencing from the conditions at her school. *Id.* ¶ 42. Ms. Harewood additionally had to seek physical therapy due to injuries sustained to her back from carrying the art supply cart up and down the stairs due to her elevator key being taken away. *Id.*

On or about June 28, 2017, Defendant Mercedes issued Ms. Harewood an unwarranted disciplinary letter to file alleging verbal abuse. *Id.* ¶ 44. Notably, a disciplinary meeting had been scheduled for Ms. Harewood to meet with Assistant Principal Varona on May 17, 2017, but was cancelled by Ms. Varona. *Id.* ¶ When Ms. Harewood finally met with Principal Mercedes on June

7

22, 2018, in regard to this allegation, he denied her the opportunity to have a copy of the disciplinary allegations. *Id.* ¶ 44. As a result of the harassment and discriminatory behavior of Principal Mercedes and his administration, Ms. Harewood retired at the end of the 2016-17 school year. *Id.*

Ms. Harewood has been constructively discharged and has suffered damages as a result of the discrimination, including out of pocket medical expenses, and other potential per session opportunity losses. *Id.* ¶ 46.

Ms. Harewood dual filed a complaint with the New York State Division of Human Rights ("SDHR") and the Equal Employment Opportunity Commission ("EEOC") based on age and race discrimination on or about July 11, 2017, and requested and received a right to sue letter from the EEOC dated April 12, 2018, a copy which is annexed as Exhibit A of the Complaint. *Id.* ¶ 47.

After filing her complaint with the SDHR and EEOC, and after she had already retired, in retaliation for filing that complaint, on Saturday, May 12, 2018, Ms. Harewood received a letter from Principal Mercedes asking her to come to the school for a disciplinary meeting regarding yet another allegation of corporal punishment and professional misconduct, despite the fact that she had retired as of June 2017. *Id.* ¶ 48.

## ARGUMENT

## POINT I

### THE COMPLAINT PLEADS MORE THAN ADEQUATE VALID RACE AND AGE DISCRIMINATION CLAIMS UNDER TITLE VII AND THE ADEA

A.  **Standard of Law**

In order to establish a *prima facie* case of discrimination under the Title VII of the Civil Rights Act of 1964 or the ADEA for discrimination based on her race/color and age, a plaintiff must show that he (1) falls within the protected group; (2) he was performing her duties

8

satisfactorily; (3) he was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 Fed. Appx. 413, 2011 U.S. App. LEXIS 4626 at *5. Though a plaintiff bears the burden of producing evidence sufficient to support a prima facie case of discrimination, such evidence need be no more than "minimal" or "de minimis." *See, e.g., Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d. Cir. 2005). A plaintiff's establishment of a prima facie case gives rise to a presumption of unlawful discrimination that shifts the burden of production to the defendant, who must proffer a "legitimate, nondiscriminatory reason" for the challenged employment action. *See Woodman*, 411 F.3d at 76.

**B.  Plaintiff Has Stated Valid Title VII Discrimination Claims Based on Race and Age**

Defendants do not contest that Plaintiff was within a protected group based on race (Black) and age, but challenge Plaintiff's claim that she suffered an adverse employment action that occurred under circumstances giving rise to an inference of discrimination. Plaintiff plainly has met her burden for both these elements to survive a motion to dismiss as this early stage of this litigation.

*1. Plaintiff has indeed suffered multiple materially adverse actions*

A plaintiff sustains an adverse employment action if she endures a "materially adverse change" in the terms and conditions of employment. *See Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) (relying on *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). A "materially adverse" change might be indicated by a "material loss of benefits" or other indices unique to a particular situation. *See Wanamaker v.*

9

*Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997). Plaintiff has suffered a material loss of benefits. Specifically, she has:

1) Suffered lost wages as a result of losing several per session overtime opportunity;

2) Retired early.

Additionally, regarding Plaintiff's annual rating, it is widely accepted that a negative evaluation or reprimand is considered an adverse employment action if it is accompanied by an adverse result such as "demotion, diminution of wages, or other tangible loss." *Browne v. City Univ. of New York*, 419 F.Supp.2d 315, 322 (E.D.N.Y. 2005), *aff'd sub nom.*, *Browne v. Queens Coll. City Univ. of New York*, 202 F. App'x 423 (2d Cir. 2006) (collecting cases); *see also Herling v, New York City Dep't of Educ.*, 13-CV-5287, NYLJ 1202654297747, at *11 (E.D.N.Y. April 22, 2014) (holding that the Unsatisfactory rating plaintiff received for the 2009-10 school year constituted an adverse employment action because it was accompanied by a pay-freeze and served to bar plaintiff from earning per-session wages). As such, because Plaintiff received an Unsatisfactory rating, which resulted in her being barred from working and earning per session income, she suffered an adverse employment action when she received her Unsatisfactory rating.

Additionally, as to the other allegations of adverse employment action, it is important to note that courts have held that no type of alleged adverse employment action should be outright dismissed without exploration as to whether it qualifies as a true adverse employment action. *See Sealy v. Hertz Corp.*, 688 F. Supp. 2d 247, 258 (S.D.N.Y. 2009) ("[I]n the retaliation context, 'no 'type of challenged conduct [may] be categorically rejected as nonactionable' under the [NYCHRL].'") (internal citations omitted).

   2. *Plaintiff has alleged facts showing discriminatory intent based on race and age*

To defeat a motion to dismiss on the pleadings in a Title VII or ADEA discrimination case,

10

a plaintiff must allege that her race, age, or other membership in a protected category was a motivating factor in the employment decision. In determining this, the Second Circuit assesses whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an "impermissible reason," *i.e.*, a discriminatory reason." *Stratton v. Dep't for the Aging for City of N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997) (quoting *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 119 [2d Cir. 1997]). A plaintiff can meet that burden through direct evidence of intent to discriminate, *see, e.g., Stratton*, 132 F.3d at 878 & n.4, or by indirectly showing circumstances giving rise to an inference of discrimination, *see, e.g., Tolbert v. Smith*, 790 F.3d 427, 436-37 (2d Cir. 2015). A plaintiff may prove discrimination indirectly either by meeting the requirements of *McDonnell Douglas* and showing that the employer's stated reason for its employment action was pretext to cover up discrimination, *see, e.g., Fisher v. Vassar Coll.*, 114 F.3d 1332, 1334 (2d Cir. 1997), or by otherwise creating a "mosaic" of intentional discrimination by identifying "bits and pieces of evidence" that together give rise to an inference of discrimination. *Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir. 1998). At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination. *See Littlejohn v. City of New York*, 2015 U.S. App. LEXIS 13475, at *7 (2d Cir. Aug. 3, 2015) (requiring facts "suggesting an inference of discriminatory motivation"). A plaintiff may also support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably. *See Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997). In order to make such a showing, the plaintiff must compare herself to employees who are "similarly situated in all material

11

respects." *Id.* at 64.

Throughout her Complaint, Plaintiff has alleged a plethora of situations in which she was treated differently than other, younger and non-Hispanic employees. For example, during the 2013-14 school year, Defendants took Plaintiff's per session position away from her and reassigned it to a younger, Dominican individual. Compl. at ¶ 16. Additionally, during that school year, Plaintiff was consistently denied art supplies and her professional duty periods were changed without her permission. *Id.* at ¶¶ 18-19. During the 2014-15 school year, Plaintiff continued to be denied per session opportunities, *id.* at ¶¶ 20, 24, she was denied art supplies, *id.* at ¶¶ 25-26, and she was asked—along with other black teachers—to leave the school. *Id.* at ¶ 23. During the 2015-16 school year, Plaintiff was once again denied art supplies, *id.* at ¶ 31, and she was not given a classroom. *Id.* at ¶ 27, 29. During the 2016-17 school year, Defendants denied Plaintiff the opportunity to work in the GEAR UP after-school program after it was given to a Dominican social worker. *Id.* at ¶ 35. Additionally, during this school year Plaintiff received less-than-effective evaluations and her first ever disciplinary letters to file due to her age and race. *Id.* at ¶¶ 39-41. Plaintiff has plainly met her burden in establishing a *prima facie* claim of discrimination due to her age and race.

### 3. Plaintiff is not obligated to respond to Defendants' purported legitimate, nondiscriminatory reasons in a motion to dismiss

Defendants boldly contend that Plaintiff's claims must be dismissed unless she sets forth factual allegations showing that Defendants' legitimate nondiscriminatory reasons were pre-textual. At this stage in litigation, Defendants have prematurely submitted a motion to dismiss. They have not submitted an Answer, and no discovery has been conducted. As such, they have not established any legitimate, non-discriminatory reasons for Plaintiff's adverse actions. Indeed, district courts have rejected similar arguments made in other cases. *See Anderson v. City of N.Y.*, 2017 U.S. Dist.

12

LEXIS 8358, at *26 (SDNY Jan. 19, 2017, No. 1:16-cv-01051 [GBD] [KHP]) (holding that at the pleading stage, a plaintiff does not need to provide discrimination, allege facts establishing every element of a *prima facie* case, or demonstrate that Defendants' legitimate nondiscriminatory reasons were pretextual); *Hausdorf, supra; White, supra* (motions to dismiss in retaliation and discrimination charges denied). Thus, it is improper and premature for Defendants to argue that the Complaint should be dismissed due to proffered nondiscriminatory reasons, as none have been raised in an Answer and none have been alleged by Plaintiff.

C. **Plaintiff Has Stated Valid Retaliation Claims under Title VII and the ADEA based on Making Complaints Against her Administrators based on Race and Age Discrimination.**

For a plaintiff to state a claim for retaliation, she must allege that (1) she engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). To qualify as an adverse employment action for a retaliation claim, the act must be one "that could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway v. White*, 543 U.S. 53 (2006).

Furthermore, the Second Circuit has found that "negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to [a] classroom on [the] fifth floor which aggravated teacher's physical disabilities" may qualify as adverse employment actions for purposes of a retaliation claim. *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 226 (2d Cir. 2006) (internal quotations and citations omitted).

As with her discrimination claims, Plaintiff has pleaded a *prima facie* claim of unlawful retaliation. Ms. Harewood dual filed a complaint with the SDHR and the EEOC based on age and race discrimination on or about July 11, 2017. In retaliation for these complaints, and after she had already retired, Plaintiff received a disciplinary letter to file. *Id.* at ¶¶ 47-48. Additionally, during the 2013-14 school year, Principal Mercedes changed Plaintiff's schedule in retaliation for Plaintiff complaining about a violation of her contractual rights under the UFT-DOE contract. *Id.* at ¶ 17.

To the extent that Defendants argue that legitimate, nondiscriminatory reasons exist for the adverse actions, they have once again conflated the standards for a motion to dismiss and motion for summary judgment. Defendants have failed to assert any nondiscriminatory reasons as they have not answered the complaint or provided any discovery.

## POINT II

### THE COMPLAINT HAS PLED MORE THAN ADEQUATE VALID RACE DISCRIMINATION AND RETALIATION CLAIMS UNDER 42 USC SECTION 1981

Plaintiff's Section 1981 claims also should survive Defendants' motion to dismiss for the reasons stated in the *White* case, *supra*. The challenged acts were in fact performed pursuant to municipal policy and custom, in that officials with policymaking authority took actions or made specific decisions which caused the alleged violation of Plaintiff's constitutional rights. *See Giscombe v. NYCDOE*, 2013 WL 829127, at *7 (S.D.N.Y. Feb. 28, 2013). Here, the school principal Mercedes acted as a final policymaker and had final decision-making authority over those decisions. Under these circumstances, their conduct clearly can be attributed to the DOE school district, and provides a more than adequate basis to proceed on 42 USC Section 1981 claims in this action. *See Williams v. Board of Education-City of Buffalo*, 2008 WL 2946003 (W.D.N.Y. 2008) (finding municipal liability when harassment was directly committed by the principal).

14

### POINT III

### THE COMPLAINT HAS PLED MORE THAN ADEQUATE VALID RACE AND AGE DISCRIMINATION CLAIMS UNDER THE NEW YORK STATE AND NEW YORK CITY HUMAN RIGHTS LAW

As very similar standards are applied based on race and age discrimination and retaliation claims under state and city law to Plaintiff's claims under federal law, these claims should proceed at this stage based on pendent jurisdiction as well.

Further, under the NYCHRL, the fourth prong of establishing a prima facie case of discrimination—that the circumstances surrounding an adverse employment action give rise to an inference of discrimination—is satisfied "if a member of a protected class was treated differently than a worker who was not a member of that protected class." *See Williams v Regus Mgt. Group, LLC*, 836 F Supp. 2d 159, 173 (SDNY 2011); *Sank v. City Univ. of New York*, 10-CV-4975, 2011 WL 5120668, at *11 (S.D.N.Y. Oct. 28, 2011); *see also Zimmerman v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

To the extent that Defendants claim a notice of claim is required for these claims, the Court should consider that Defendants were on notice through Plaintiff's official OEO complaint filing with the DOE as early as March 2013. In addition, recent case law suggests that a notice of claim is not required to be filed against a school principal or assistant principal as they are not officials of the District for purposes of a notice of claim. *See Collins v City of NY*, 156 F. Supp. 3d 448, 460 (SDNY 2016) (citations omitted).

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss the complaint in its entirety, order the case to proceed to discovery on all

material factual issues, and grant such other and further relief as the Court may deem just and proper.

Dated:     New York, New York
           October 19, 2018

                                              **GLASS & HOGROGIAN LLP**
                                              Attorneys for Plaintiff
                                              85 Broad Street, 18th Floor @ Wework
                                              New York, NY 10004
                                              (212) 537-6859

By: _____s/ /s/ Bryan Glass_____
                  Bryan D. Glass, Esq.