UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

HARRIET HAREWOOD,

                Plaintiff,           **AMENDED COMPLAINT**

   -against-                 18 Civ. 5487 (KPF)(KHP)

                                        JURY TRIAL DEMANDED

NEW YORK CITY DEPARTMENT OF EDUCATION; ROBERT MERCEDES, in his Capacity as PRINCIPAL OF MIDDLE SCHOOL 390 and INDIVIDUALLY; ANDREA VARONA, in her Capacity as ASSISTANT PRINCIPAL OF MIDDLE SCHOOL 390 and INDIVIDUALLY,

                Defendants.
_____

Plaintiff HARRIET HAREWOOD, by and through her attorneys GLASS & HOGROGIAN LLP, as and for her Amended Complaint, alleges as follows:

**PRELIMINARY STATEMENT**

1.    Plaintiff HARRIET HAREWOOD ("Plaintiff" or "Harewood"), a tenured art teacher formerly employed by the New York City Department of Education (NYCDOE), brings this action based on unlawful discrimination and retaliation on the basis of her age and race in violation of the federal Age Discrimination in Employment Act ("ADEA"); Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et. seq.*; the New York State Human Rights

1

Law, N.Y. Exec Law § 296 ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-101 *et. seq*. ("NYCHRL"); and 42 U.S.C. § and § 1983, which also address Equal Protection violations.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1331, because this action involves federal claims for age and race discrimination under the ADEA, Title VII, and 42 U.S.C. § 1981 and § 1983.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the acts or omissions giving rise to this action occurred in this District and Defendants are subject to personal jurisdiction in this District.

## THE PARTIES

4. Plaintiff HARRIET HAREWOOD is a resident of the State of New York and a teacher formerly employed within the school system operated by the New York City Department of Education.

5. At all times relevant herein, Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE") is a city school district established under the laws of the State of New York and is Plaintiff's employer.

6. At all times relevant herein, Defendant Principal ROBERT MERCEDES was the Principal of Middle School 390 ("MS 390") in the Bronx, New York. He is sued in both his official and individual capacities. Upon information and belief of Plaintiff, Principal Mercedes is of Dominican national origin.

7. At all times relevant herein, Defendant Assistant Principal (AP) ANDREA VARONA was the Assistant Principal of Middle School 390 ("MS 390") in the Bronx, New York. She is sued in both her official and individual capacities. Upon information and belief of Plaintiff, AP Varona is of Dominican national origin.

**FACTUAL ALLEGATIONS**

8. Ms. Harewood was an art teacher within Defendant NYCDOE at MS 390 within District 10 in the Bronx since September 1999 until June 2017.

9. Ms. Harewood's race is black.

10. Ms. Harewood is 57 years old, born February 11, 1961.

11. As of the time of her retirement, Ms. Harewood was one of the oldest staff members on the staff of the school, with the most seniority in the school.

12. Ms. Harewood consistently received "Satisfactory" and/or "Effective" and/or "Highly Effective" ratings, observations, and annual evaluations at MS 390 up until the 2015-2016 school year.

13. Since the 2013-2014 school year, the MS 390 administration, led by Principal Mercedes, has been targeting older and/or black teachers and other staff in favor of younger and/or Hispanic staff members at the school.

14. During the 2013-2014 school year, several older and/or black teachers were asked to leave the school or were pushed out by Principal Mercedes and his administration. For example, a black general education teacher, who is approximately 64 years old, Linda White, who co-taught with a Dominican special education teacher, Mr. Alvarez, received consistently negative ratings during the 2013-2014 school year despite her Dominican counterpart Mr. Alvarez receiving positive ratings. This ultimately led to Ms. White leaving the school. Additionally, younger and/or

3

Dominican teachers who were ineffectively rated were not asked to leave the school, including Amanda Dreeban, Victor Vargas, Teodoro Thimodent, and Anna Bermudez.

15. This pattern has continued since the 2013-2014 school year, as Principal Mercedes has replaced a significant percentage of the older or black staff in favor of white and/or Dominican and/or younger teachers. During that school year, Ms. Harewood sat in several staff meetings on or about December and January of the 2013-14 school year, where Principal Mercedes stated that senior staff was "too expensive" and he would reach out to NYCDOE Legal to obtain assistance on having those staff members removed.

16. In March of 2013, upon information and belief, Principal Mercedes received notification from DOE supervisors that he had to reduce his staff because of budget cuts. He only targeted non-Hispanic employees to leave, including George Swander, Myrna Kinkle, Canavan, Susan Carr -Lagomarsini, Eileen Kojes, Darryl Mcknight, Juanita Murray, Steve Bernstein, Linda White, and Claire Scesney –Lundahl. Of the employees targeted, Susan Carr-Lagomarsini, Myrna Kinkle, Darryl McKnight, Juanita Murray, and Linda White are all non-Hispanic Black.

17. Upon information and belief, Principal Mercedes set out to target ten veteran, non-Hispanic staff members with relatively high salaries. He ultimately succeeded in having seven of the ten staff members removed from their positions through trumped up charges, forced retirement, or forced medical leave.

18. Principal Mercedes began targeting Ms. Harewood during the 2013-2014 school year. For years, Ms. Harewood had earned per session income as the morning scheduler. However, during the 2013-2014 school year, Principal Mercedes took this role away from Ms. Harewood and gave it to a younger, Dominican individual Jose Duran.

19. Also, during the 2013-2014 school year, Ms. Harewood was not initially given a lunch period, which was a violation of her contractual rights. When she complained about this to Principal Mercedes, on or about October 2, 2013, he sent an email to her falsely stating that several staff members were complaining about her. Additionally, in retaliation for Ms. Harewood's complaint, Principal Mercedes changed her schedule so that she had 25 teaching periods per week, which was also a violation of her contractual rights to a maximum of 22 teaching periods per week.

20. On or about November 6, 2013, Ms. Harewood's professional AM bus duty—which teachers select at the beginning of the year—was changed without her permission. This was a violation of the contract as an administrator cannot change Circular 6 Professional Activity Options without permission from her union the UFT.

21. Consistently throughout the 2013-2014 school year until she retired, Ms. Harewood would be denied art supplies by Principal Mercedes. She was told by Virginia Pou, the Dominican bilingual Guidance Counselor, and by Principal Mercedes there was no funding for art and there was funding only for the part time music teacher Ms. Maire.

22. Beginning in the 2014-2015 school year, and continuing through the 2015-2016 and 2016-2017 school years, Ms. Harewood was denied the opportunity to provide afterschool per session instruction to help students prepare portfolios for specialized high schools. Ms. Harewood had devoted 2-3 hours twice a week to help students prepare portfolios.

23. In 2015, Principal Mercedes started targeting his Assistant Principals. The black Assistant Principal Cinnamon Harris did not have an office for the school year 2016-17. Her office was taken away and given to the younger Dominican Assistant Principal Andrea Varona.

24. On January 15, 2015, Principal Mercedes called Ms. Harewood into a meeting, where he told her, in sum and substance, that he no longer needed her at MS 390 as a teacher, and

that he and the administration wanted to move forward without her. Upset by Principal Mercedes's comments, Ms. Harewood left the meeting.

25. The next day, Ms. Harewood went to her union representative, who requested a meeting with Principal Mercedes on her behalf. During the meeting that followed, Principal Mercedes denied making the aforementioned comments.

26. Notably, other black teachers and a white teacher were also asked to leave the school on January 15, 2015, including Tiffany Mack, Elaine Blocker, Bari Martinelli and Christina Gianfrancesco.

27. In or around March 2015, after attending book-making professional development courses—for which she had previously received permission by Principal Mercedes to attend—Ms. Harewood was denied the opportunity to develop a book-making per session class despite having a commitment letter signed by Principal Mercedes to attend and make a book for the contest.

28. On or about March 10, 2015, Ms. Harewood requested certain art supplies for her students. In response, Principal Mercedes informed her that the school did not have the funding for these supplies. Ms. Harewood knew this to be false, however, because the school had received a $1,000 from Arts Studio Funding to be used for art supplies. Arts Studio Funding was an allocation of $1,000 from the Mayor's Arts Allocation to all eligible art teachers. According to the NYCDOE Division of Human Resources and Office of Data Management, this supplemental funding to schools is for the purchase of studio materials to enhance teaching and learning in visual arts. Eligible teachers, those of regular, active status, and secondary teachers, those who are assigned full time, teaching at least fifty percent of their assigned STARS classes in the arts, and holding NYS certification in art content, are all entitled to receive these funds. Principal Mercedes was advised about this allocation through the School's Allocation Memorandum.

29. Beginning in June 2015, Principal Mercedes eliminated the art classroom and forced Ms. Harewood to push into classrooms in two different buildings with multiple floors with an art cart with limited supplies. Previously, Ms. Harewood had taught out of a classroom for her entire career. Ms. Harewood was originally given a room in the gym that was an old shower area. When Ms. Harewood accepted the space, Principal Mercedes said he needed the space back for storage and only placed a few new chairs there. Joe Lamanucusa, the fireman of the school, found a small closet on the second-floor space and assigned it to Ms. Harewood.

30. Ms. Harewood was forced to push into classrooms to teach out of her license area. Principal Mercedes assigned Ms. Harewood to teach writing during the 2015-2016 school year. During this time, one student wrote humiliating and degrading writing assignments about Ms. Harewood, which the other writing teacher Ms. Smith shared with her. When Ms. Harewood read the writings, she was hurt and deeply humiliated. When she complained and shared copies of the writing assignments to Principal Mercedes and Susan Carr-Lagomarsini, they took no action. The student was never disciplined or removed.

31. As Ms. Harewood now had to wheel a shopping cart with two wheels, and a large laundry bag throughout the school day to different classrooms, she requested use of an elevator key. Principal Mercedes denied her request. Other younger and Hispanic staff members, including Tech Specialist Pedro Reyes, IEP/SETTS special education teacher Eleuterio Alvarez, and teacher Maria Adorno, could use the elevator without a doctor's note. Only Ms. Harewood was required to produce a doctor's note.

32. In so eliminating the art classroom, Principal Mercedes claimed that the art classroom was needed for storage, yet there were numerous other empty rooms left vacant during the entire 2015-2016 and 2016-2017 school years.

33. On March 15, 2015, Principal Mercedes scheduled a meeting to engage in conversation about co-locating music and arts instruction in the art room. Principal Mercedes stated that "the music and art rooms are not factored as actual space and have to be used as storage for literacy materials due to arrive over the summer and as multi-purpose rooms in order to meet the enrollment formula that the DOE prescribes." Only the art room was eliminated, and the part time music teacher, Ms. Andrea Maire, kept her music room in Room 313. The art room was eventually used as an Integrated Co-teaching ("ICT") room, sixth grade class, and the storage area was used by the teachers to sit and do work.

34. On or about September 25, 2015, after AP Varona observed Ms. Harewood eating lunch in her colleague and friend's classroom—because there was no cafeteria in the school--her lunch period was inexplicably changed to a different period. As a result, Ms. Harewood had nowhere to eat lunch, as she had no classroom and her colleagues' lunch periods were during different periods than hers.

35. Ms. Harewood could not eat with colleagues during her lunchtime and had to eat lunch in her closet, in her car, the auditorium, or on the stairs next to her closet. When she ate lunch in Room 103 for a week, someone reported her, and the room was locked. This room also has a refrigerator with a padlock, and only the Dominican staff members, Jose Duran, Virginia Pou, Liza Ceballos, and Guilllermin Ceballos, could use it. When Ms. Harewood found empty rooms to eat, they were subsequently locked, or notes were posted on the doors not to use the room at her lunchtime.

36. During the 2015-2016 Parents Teacher Conference night, Principal Mercedes forced her to sit in a hallway to speak to parents, while other teachers were in their assigned rooms.

37. Principal Mercedes continued to deny Ms. Harewood art supplies throughout the 2015-2016 school year.

38. In or around January 2016, Ms. Harewood began working in the GEAR-UP after-school program through June 2016, which was pensionable per session income above her regular salary for teaching Humanities twice a week after school. After securing this position for the 2016-2017 school year, several weeks into the school year, without any explanation, she was denied the opportunity to work for the program after it was given to a Dominican social worker, Guillermin Ceballos, to run. The program was unilaterally changed to a Saturday program in lieu of after-school program and she was not offered an opportunity to work with the program. On October 27, 2016, Ms. Harewood received an email informing her that she would no longer be eligible for the after-school program.

39. Ms. Harewood worked Tuesdays and Wednesdays in the GEAR-UP program from 2:30-4:30 pm earning $47 an hour from 2/05/16- 4/01/16, with Cinnamon Harris, the black AP. The 2016-2017 GEAR-UP program, which was run by Guillermin Ceballos, started in November 2016 on Saturdays.

40. As of September 2016, Ms. Harewood had no plans to retire until June 2020, when her daughter would have finished college.

41. However, over the months that followed in the 2016-2017 school year, Defendants created such a hostile work environment that forced Ms. Harewood to retire earlier than she wished. When Ms. Harewood asked for a new storage space because her closet space was too small, Principal Mercedes ignored her request. Ms. Harewood could not attend professional development with peers and was isolated the entire day in a room.

42. On February 1, 2017, Ms. Harewood received a new faculty schedule. On the new schedule, she was to pick up students from the lunchroom every day after her lunch. According to Circular 1, it was the classroom teacher's responsibility to drop and pick up their class from preparation periods. Younger Hispanic teachers, Michelle Cerritos and Alejandrina Bello, both sixth grade bilingual teachers, were not required to pick students up from lunch. In fact, Ms. Harewood was the only teacher required to do so.

43. Also beginning around Spring 2017, Ms. Harewood began receiving less-than-effective evaluations and her first ever disciplinary letters to file, in contrast to receiving consistently effective evaluations and having no disciplinary history in previous years.

44. Ms. Harewood received a less-than-effective observation from AP Varona on May 2, 2017, for an April 20, 2017 informal observation. When she emailed AP Varona asking for feedback as to why she was rated less-than-effective—because the observation report itself contained no actual factual observations—Ms. Harewood received an email directing her to refer to the Danielson Rubric—which is 56 pages long—with no further specifics. Teachers are contractually required to have an initial and a post planning conference for an observation. Ms. Harewood received neither.

45. After sending emails and a certified letter to AP Varona asking about feedback for her April 20, 2017 observation. AP Varona never discussed the observation report with Ms. Harewood, but instead sent her emails to Principal Mercedes. Ms. Harewood then started receiving letters from Principal Mercedes about fabricated allegations of verbal abuse. Principal Mercedes stated he reached out to NYCDOE legal to obtain assistance on emails sent to AP Varona.

46. On May 9, 2017, Ms. Harewood received her first-ever disciplinary letter to file based on false allegations of corporal punishment against her. Notably, this investigation was

10

conducted in house by Principal Mercedes. The letter itself is riddled with falsities, including that a classroom teacher, Alejandrina Bello, whose class is on the other side of the building, witnessed the alleged altercation.

47. On May 16, 2017, Principal Mercedes took away the elevator key that had been given to Ms. Harewood.

48. On May 19, 2017, upon arriving to her scheduled ICT class, Ms. Harewood was asked by Ms. Dreeban, the classroom science teacher, to collaborate her art lesson with the teacher's science lesson. During the period, Ms. Dreeban worked with a small group of students, while the remainder of the class worked in small groups using laptops to do research for their science project. Ms. Harewood was walking around assisting students who were working on Ms. Dreeban's lesson plan as well as assisting students who were working on art posters.  Ms. Harewood helped with the layout of the posters and supplied the markers, crayons, watercolors and other materials for the art posters.

49. During this collaboration on May 19, 2017, Principal Mercedes did an informal observation of Ms. Harewood's teaching for the first time of the 2016-2017 school year. This was the second time in eighteen years that Ms. Harewood was observed by Principal Mercedes.

50. On May 23, 2017, Ms. Harewood received her observation report from Principal Mercedes with ineffective ratings in five areas for the observation conducted on May 19, 2017. Principal Mercedes stated in the observation report that "he asked six students to provide him with the rationale of working on the science project in art class and students were unable to articulate a reason." Principal Mercedes also stated in his observation report, "The support of the classroom teacher did not provide added support to your class, for students working with the teacher worked on a science project. In the future avoid the competing interest. It takes away from instruction."

Ms. Harewood was not competing with the classroom teacher; rather as educators they were collaborating to make connections between other disciplines. Ms. Harewood was distraught from the observation report.

51. Ms. Harewood later confronted Ms. Dreeban about her motivation for staying in the room during her prep period to which Ms. Dreeban did not respond. Ms. Harewood's informal observation was sabotaged by the Dominican teacher, Amanda Dreeban.

52. Ms. Harewood also received a less-than-effective evaluation on May 23, 2017 for a May 19, 2017 observation that contained numerous ineffective rated components. This was the first time in 33 years that Ms. Harewood had ever been rated ineffective or unsatisfactory. Notably, the lesson for which she was observed was a science lesson on which she had collaborated with the classroom science teacher, Amanda Dreeben, as a favor to the teacher.

53. After complaining about her first observation of the 2016-2017 school year, Ms. Harewood was falsely accused of verbal abuse and other misconduct. Guidance counselor Susan Carr-Lagomarsini falsely let students write statements claiming she committed verbal abuse, and because Principal Mercedes claimed this verbal abuse was substantiated, he recommended OSI proceed with disciplinary charges to terminate her. Susan Carr-Lagomarsini also falsely stated she was witness to a corporal punishment allegation against Ms. Harewood. Another Dominican staff member, Alejandrina Bello, a sixth-grade bilingual teacher, stated she also witnessed Ms. Harewood engage in corporal punishment, which was completely fabricated.

54. In May 2017, Principal Mercedes made a humiliating announcement over the school intercom for Ms. Harewood to return the elevator key, although Principal Mercedes knew she had a medical condition as justification to use the elevator. Ms. Harewood returned the key.

55. After the elevator key was taken from her, Ms. Harewood's physical condition worsened. She was in constant pain, nervous, stressed, and depressed. Ms. Harewood had to use her back brace constantly, took muscle relaxants, and attended physical therapy. All the stress and anxiety created by Defendants forced her to take time off for fear of losing her job and sustaining a permanent back injury. Ms. Harewood witnessed the discriminatory and retaliatory behavior Principal Mercedes had exhibited towards many staff members who were asked to leave and did not leave, including Juanita Murray, Darryl McKnight, Claire Scesney-Lundahl, and Linda White, all of whom were brought up on Section 3020-a charges, as well as Steve Bernstein, who was forced to take medical leave, brought up on numerous false allegations, received Section 3020-a charges, and forced into retirement.

56. On or about June 28, 2017, Principal Mercedes issued Ms. Harewood an unwarranted disciplinary letter to file alleging verbal abuse by her. Notably, a disciplinary meeting had been scheduled for Ms. Harewood to meet with AP Varona on May 17, 2017, but was cancelled by AP Varona. When Ms. Harewood finally met with Principal Mercedes on June 22, 2018, regarding this allegation, he denied her the opportunity to have a copy of the allegations.

57. On May 25, 2017, based on a recommendation from her doctor, Ms. Harewood requested and took a leave of absence from May 28 until June 14, 2017, due to the stress she was experiencing from the conditions at her school.

58. Ms. Harewood additionally had to seek physical therapy due to injuries sustained to her back from wheeling the art supply cart up and down the stairs due to her elevator key being taken away her by Principal Mercedes.

59. Based on the ongoing abuse and mistreatment, Ms. Harewood decided on June 13, 2017, that it was best to retire before her recommended Section 3020-a disciplinary proceeding for

false allegations was commenced against her. Ms. Harewood was having severe anxiety about possible assignment to the Absent Teacher Reserve and for fear of losing her job.

60. In June 2017, Principal Mercedes's practice of targeting non-Dominican staff members continued. Principal Mercedes asked or forced several non-Dominican staff members to leave a few days before the end of the school year. Staff members forced or asked to leave the school included Tyrike Saunders, Natasha Bruton, Alexis Carr, Elaine Blocker, and Kisha Rios Henry.

61. Based on the harassment and discriminatory behavior of Principal Mercedes and his administration towards her, Ms. Harewood retired at the end of the 2016-2017 school year.

62. Ms. Harewood filed a dual filed complaint with the New York State Division of Human Rights ("DHR") and the Equal Employment Opportunity Commission ("EEOC") based on age and race discrimination on or about July 11, 2017. She subsequently requested and received a right to sue letter from the EEOC dated April 12, 2018, a copy which is annexed as Exhibit A.

63. After filing her complaint with the SDHR and EEOC, on Saturday, May 12, 2018, Ms. Harewood received a letter from Principal Mercedes asking her to come to the school for a meeting regarding an allegation of corporal punishment and professional misconduct, even though Ms. Harewood was retired at the end of the 2016-2017 school year.

**FIRST CLAIM FOR RELIEF**

**(Claims for Violation of Title VII—Discrimination and Retaliation Based on Race Against Defendant NYCDOE)**

64. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

65. Defendant NYCDOE, through the aforementioned conduct, have violated Title VII of the Civil Rights Act of 1964, by discriminating and retaliating against Plaintiff based on her race.

## SECOND CLAIM FOR RELIEF

### (Claims for Violation of 42 USC Section 1981 and 1983 — Discrimination and Retaliation Based on Race Against All Defendants)

66. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

67. Defendants, through the aforementioned conduct, have violated Sections 1981 and 1983, by discriminating and retaliating against Plaintiff based on her race.

## THIRD CLAIM FOR RELIEF

### (Claims for Violation of the ADEA — Discrimination and Retaliation Based on Age Against Defendant NYCDOE)

68. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

69. Defendant NYCDOE, through the aforementioned conduct, has violated the ADEA by discriminating and retaliating against Plaintiff based on her age.

## FOURTH CLAIM FOR RELIEF

### (Claims for Violation of New York State Human Rights Law — Discrimination and Retaliation Based on Race and Age against All Defendants)

70. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

71. Defendants, through the aforementioned conduct, have violated the New York State Human Rights Law, by discriminating against Plaintiff based on her race and age.

## FIFTH CLAIM FOR RELIEF

**(Claims for Violation of New York City Human Rights Law — Discrimination and Retaliation Based on Race and Age against All Defendants)**

72. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

73. Defendants, through the aforementioned conduct, have violated the New York City Human Rights Law, by discriminating against Plaintiff based on her race and age.

## JURY DEMAND

Plaintiff demands a trial by a jury on all of the triable issues of this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for declaratory relief and damages as follows:

A. A declaratory judgment that Defendant NYCDOE is in violation of federal Title VII of the Civil Rights Act of 1964;

B. A declaratory judgment that Defendants are in violation of federal 42 USC Sections 1981 and 1983;

C. A declaratory judgment that Defendant NYCDOE is in violation of federal ADEA;

D. A declaratory judgment that Defendants are in violation of the New York State Human Rights Law;

E. A declaratory judgment that Defendants are in violation of the New York City Human Rights Law;

G. Awarding Plaintiff compensatory damages (including but not limited to emotional distress damages) and punitive damages (to the extent available) pursuant to Title VII, the ADEA, 42 U.S.C. Sections 1981 and 1983, the New York State Human Rights Law, and the New York City Human Rights Law;

    H.    Awarding Plaintiff costs and reasonable attorneys' fees; and

    I.    Such other and further relief as to this Court may deem necessary, just and proper.

Dated:    New York, New York
             June 14, 2019

                        **GLASS & HOGROGIAN LLP**
                        Attorneys for Plaintiff
                        85 Broad Street, 18th Floor
                        New York, NY 10004
                        (212) 537-6859

                        By: *S/ Bryan Glass*
                                Bryan D. Glass, Esq.