18 Civ. 5487 (KPF)(KHP)

UNITED STATES DISTRICT COURT SOUTHERN
DISTRICT OF NEW YORK

HARRIET HAREWOOD,

Plaintiff,

- against -

NEW YORK CITY DEPARTMENT OF
EDUCATION; ROBERT MERCEDES, in his
Capacity as PRINCIPAL OF MIDDLE SCHOOL
390 and INDIVIDUALLY; ANDREA VARONA, in
her Capacity as ASSISTANT PRINCIPAL OF
MIDDLE SCHOOL 390 and INDIVIDUALLY,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### JAMES E. JOHNSON
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-138
New York, New York 10007-2601
Tel: (212) 356-1654

Of Counsel:   Isaac S. Baskin

Matter No.: 2018-048112

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES....................................................................................................i

PRELIMINARY STATEMENT .........................................................................................1

STATEMENT OF FACTS..................................................................................................2

ARGUMENT .......................................................................................................................7

      POINT I................................................................................................................7

           MANY OF PLAINTIFF'S CLAIMS ARE TIME-BARRED. ...............................................................................................7

      POINT II...............................................................................................................8

           THERE ARE NO TRIABLE ISSUES OF FACT CONCERNING PLAINTIFF'S DISCRIMINATION CLAIMS. ...........................................8

           A.  Title VII and ADEA– Disparate Treatment Standard ...............................................................8

           B.  Disparate Treatment - No Adverse Action .........................................9

           C.  Disparate Treatment – No Inference of Discriminatory Intent ....................................13

           D.  Disparate Treatment – Defendants' Legitimate, Non-Discriminatory Reasons.........................................16

           F.  Hostile Work Environment.............................................20

           G.  Plaintiff's Constructive Discharge Claims Fail as a Matter of Law..........................................................21

      POINT III............................................................................................................23

           THERE ARE NO TRIABLE ISSUES OF FACT FOR ANY OF PLAINTIFF'S RETALIATION CLAIMS. ...............................................................................23

CONCLUSION .................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bailey v. New York City Board of Education, 536 F. Supp. 2d 259, 266
(E.D.N.Y. 2007)................................................................................................22

Barbagallo v. General Motors Corp., 88 Civ. 1534 (MJL), 1996 U.S. Dist. LEXIS
416 *12-13 (S.D.N.Y. Jan. 16, 1996)............................................................22, 23

Bermudez v. City of New York, 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011) ...........15

Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999), cert. denied, 530
U.S. 1242 (2000)................................................................................................9

Brennan v. Metropolitan Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999) ...............21

Canales-Jacobs v. N.Y.S. Off. Of Court Admin., 640 F. Supp. 2d 482, 504
(S.D.N.Y. 2009)................................................................................................13

Chung v. City Univ. of New York, 605 F. App'x 20, 22 (2d Cir. 2015)....................10

Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) ........................................24

Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993)......................24

Dowrich-Weeks v. Cooper Square Realty, Inc., 535 Fed. Appx 9, 13 (2d Cir.
2013) ................................................................................................................21

Duncan v. New York City Transit Auth., 127 F. Supp. 2d 354, 362 (E.D.N.Y.
2001) ................................................................................................................17

Early v. Wythe Pharms., Inc., 603 F. Supp. 2d 556, 583 (S.D.N.Y. 2009) ...............22

Edwards v. Huntington Union Free Sch. Dist., 957 F. Supp. 2d 203, 213
(E.D.N.Y. 2013)................................................................................................22

Figueroa v. City of New York, 198 F. Supp. 2d 555, 568 (S.D.N.Y. 2002)...............10

Figueroa v. N.Y. City Health & Hosps. Corp., 03 Civ. 9589 (NRB), 2007 U.S.
Dist. LEXIS 58342, at *12 (S.D.N.Y. Aug. 7, 2007) ....................................11

Fisher v. Vassar College, 114 F.3d 1332, 1335-36 (2d Cir. 1997)..............................9

Forest v. New York State Office of Mental Health, 672 F. App'x 42, 45 n.3 (2d
Cir. 2016)..........................................................................................................11

Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)................................. 9

Garcia v. Henry St. Settlement, 501 F. Supp. 2d 531, 540 (S.D.N.Y. 2017)............................. 17

Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000) .................................................... 13

Grillo v. N.Y. City Transit Auth., 291 F.3d 231, 234 (2d Cir. 2002)............................................ 9

Harris v. Forklift Sys. Inc., 510 U.S. 17, 23 (1993) ...................................................................... 21

Hawana v. City of New York, 230 F. Supp. 2d 518, 528 (S.D.N.Y. 2002)................................. 10

In re N.Y. City Dep't of Educ., No. 15 Civ. 7150 (AJN), 2019 U.S. LEXIS 54430,
    at *19 (S.D.N.Y. Mar. 29, 2019) ......................................................................... 17-18, 24

Isbell v. City of New York, 316 F. Supp. 3d 571, 591-92 (S.D.N.Y. 2018)............................... 21

Joseph v. Levitt, 465 F.3d 87, 91 (2d Cir. 2006)........................................................................ 11

Judith Mills v. S. Conn. State Univ., 519 F. App'x 73, 75 (2d Cir. 2013) ........................... 13, 20

Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C., 716 F.3d 10,
    14 (2d Cir. 2013)........................................................................................................... 23

Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d
    Cir. 2006)........................................................................................................................ 24

Lam v. N.Y.C. Dep't of Educ., No. 18 Civ. 2756 (PGG), 2019 U.S. Dist. LEXIS
    90707, at *29-30 (S.D.N.Y. May 29, 2019)..................................................................... 12

Lawson v. N.Y.C. Bd. of Educ., No. 05 Civ. 825 (JSR)(HBP), 2011 U.S. Dist.
    LEXIS 25202, at *53-54, n.6 (S.D.N.Y. Feb. 25, 2011).................................................. 12

Leibovitz v. New York City Transit Auth., 252 F.3d 179, 188 (2d Cir. 2001).......................... 20

Littlejohn v. City of New York, 795 F.3d 297, 321 (2d Cir. 2015)............................................. 21

McAllister v. Queens Borough Pub. Library, 309 Fed. App'x 457, 459 (2d Cir.
    2009) ............................................................................................................................. 24

McDonnell Douglas Corp., v. Green, 411 U.S. 792, 802 (1973).................................................. 8

McGann v. City of New York. 12 Civ. 5746 (PAE), 2013 U.S. Dist. LEXIS
    43541, *15 (S.D.N.Y. March. 27, 2013)......................................................................... 22

McPherson v N.Y. City Dep't of Educ., 457 F.3d 211, 216 (2d Cir 2006) .................................. 9

Ouaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995)....................................................... 19

Pa. State Police v. Sunders, 542 U.S. 129, 149 (2004) ............................................... 21

Riddle v. Citigroup, 449 F. Appx. 66, 69 (2d Cir. 2011) ............................................. 7

Robins v. New York City Bd. of Educ., No. 07 Civ. 3599, 2010 U.S. Dist. LEXIS
    61451, *14-15 (S.D.N.Y. 2010), aff'd, 606 Fed. Appx. 630, 631 (2d Cir.
    2015) ....................................................................................................................... 7

Ruiz v. County of Rockland, 609 F.3d 486, 491-92 (2d Cir. 2010) .............................. 8

Shumway v. United Parcel Serv., 118 F.3d 60, 63 (2d Cir. 1997) ............................... 13

Silverman v. City of New York, 216 F. Supp. 2d 108, 115 (E.D.N.Y. 2002) ............... 22

Spence v. Maryland Casualty Co., 995 F.2d 1147 (2d Cir. 1993) ............................... 22

St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) ..............................8-9, 19

Summa v. Hofstra Univ., 708 F.3d 115, 123-24 (2d Cir. 2013) ................................... 20

Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) ................................................... 20

Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-56 (1981) ..................... 9

Tolbert v. Smith, 790 F.3d 427, 439 (2d Cir. 2015) ..................................................... 20

Torres v. Pisano, 116 F.3d 625, 640 (2d Cir. 1997) .................................................... 9

Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985) .............................. 8

Watson v. Richmond Univ. Med. Ctr., 408 F. Supp. 3d 249, 262 (E.D.N.Y. 2019) ... 13

Weeks v. N.Y. State, 273 F.3d 76, 86 (2d Cir. 2001) ................................................... 10

Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) ..............................8-9

**Statutes**

Age Discrimination in Employment Act of 1967 ............................................... *passim*

N.Y. Educ. L. § 3020-a .............................................................................................. 23

Title VII of the Civil Rights Act of 1964 ......................................................... *passim*

## PRELIMINARY STATEMENT

Plaintiff, a former teacher employed by the New York City Department of Education ("DOE"), brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Age Discrimination in Employment Act of 1967 ("ADEA"), alleging that she was discriminated against based on her race (Black) and her age (then 56), and that she was subject to retaliation, all of which compelled Plaintiff to retire in June, 2017.

Defendants now move for summary judgment dismissing the Second Amended Complaint ("SAC") for the following reasons.  First, the majority of Plaintiff's claims are time-barred by the applicable 300-day statute of limitations. On July 11, 2017, Plaintiff dual filed her charge of discrimination with the New York State Division of Human Rights ("SDHR") and the United States Equal Employment Opportunity Commission ("EEOC").   Therefore, all of Plaintiff's allegations before September 14, 2016, are time-barred and must be dismissed.

Second, Plaintiff cannot establish a prima facie case of disparate treatment or hostile work environment under either statute because there is no record evidence to establish or suggest that Defendants' actions were motivated by any discriminatory animus.  Specifically, Plaintiff cannot point to any similarly situated individual, outside of Plaintiff's protected classes, who was treated more favorably than Plaintiff under similar circumstances. Nor has Plaintiff shown that she was subjected to discriminatory behavior that was sufficiently severe or pervasive to alter her working conditions.

Even assuming, arguendo, that Plaintiff could establish a prima facie case, the record evidence clearly demonstrates that Defendants' actions are supported by legitimate, non-discriminatory reasons, and Plaintiff cannot show any evidence of pretext.

Third, Plaintiff's failure to establish a hostile work environment claim, likewise, requires the dismissal of her constructive discharge claim. Constructive discharge claims are

considered aggravated hostile work environment claims and, thus, without establishing the former, Plaintiff cannot establish the latter. Nor can Plaintiff establish a constructive discharge claim where, as here, there were other avenues for Plaintiff to address her complaints.

Finally, Plaintiff's retaliation claims fail as the only protected activity Plaintiff engaged in was dual filing the SDHR and EEOC charge **after** she retired from her DOE position. As Plaintiff had already severed the employment relationship with Defendants, she cannot establish that she suffered any adverse employment action due to her filing of this charge.

Accordingly, Defendants' motion for summary judgment should be granted.

### STATEMENT OF FACTS[1]

**A. Background**

Plaintiff self-identifies Black woman, and was born in 1961.  See Def. 56.1 ¶ 4.  In September, 1999, Plaintiff was a tenured art teacher appointed to teach art for the DOE at Middle School 390 ("MS 390") in the Bronx, New York.  Id. ¶¶ 1, 8, 12.  The principal for MS 390 throughout Plaintiff's tenure was Robert Mercedes. Id. ¶¶ 8-14.

**B. Trivial Changes to Plaintiff's Schedule and Provision of Art Supplies to Plaintiff**

Plaintiff claims that beginning in the 2013-14 school year, the MS 390 administration started targeting her for removal as the administration wanted to hire younger, Hispanic teachers.  See Second Amended Complaint, filed June 20, 2019 ("SAC"), Dkt No. 43, Ex. A, ¶¶ 17-18.  During the 2013-14 school year, Principal Mercedes transferred Plaintiff's duties

---

[1] The Defendants' statement of facts is derived from Defendants' Local Civil Rule 56.1 Statement of Undisputed Material Facts, dated May 22, 2020 ("Def. 56.1"), and the Declaration of Isaac S. Baskin, dated May 22, 2020, ("Baskin Decl."). All references to "Exhibit" or to "Ex." are to the exhibits annexed to the Baskin Decl.

as the MS 390 morning scheduler, in which she earned per session income,[2] to MS 390 Parent Coordinator Joes Duran. See Def. 56.1 ¶¶ 15-19. The morning scheduler position required Plaintiff to work before the school day started. Id. ¶ 17. Principal Mercedes explained that Mr. Duran was already scheduled to work before school started, unlike Plaintiff, and, therefore, he did not have to pay Mr. Duran, as he did with Plaintiff, for this morning scheduler position, thus, saving the school much needed funds. See Def. 56.1 ¶¶ 20-21.

Plaintiff also claims that starting in 2013 until her retirement, the MS 390 administration denied some of her art supply requests. See Def. 56.1 ¶¶ 77-85. However, MS 390 provided Plaintiff with a $1000 budget each school year, which was increased to $1200 during the 2016-17 school year. Id., ¶¶ 79-80. Plaintiff's Union, the United Federation of Teachers, supplemented Plaintiff's budget through its Teacher's Choice program, where Plaintiff could seek reimbursement for up to $125 in art supplies. Id., ¶ 81. In addition, Plaintiff had access to a DOE warehouse in Manhattan, New York, where she could pick-up art supplies free of charge. Id., ¶ 82. When Plaintiff requested more supplies than MS 390 could afford Principal Mercedes informed Plaintiff that she needed to cut down on her request. Id., ¶¶ 83-84.  Plaintiff noted that this budgetary constraint was felt by all the teachers at MS 390 as, "[e]veryone always need[ed] supplies." Id., ¶ 85.

Next, Plaintiff complains that the MS 390 administration repeatedly made minor changes to Plaintiff's schedule. See Def. 56.1 ¶¶ 22-35. On September 16, 2013, Plaintiff complained to Mr. Duran that her schedule did not include a defined lunch period. Id. ¶ 22.  Mr. Duran informed Principal Mercedes of this and Principal Mercedes changed Plaintiff's schedule

---

[2] Per session income is money teachers could earn for working on programs outside their normal work hours and in addition to their salaries. See Def. 56.1 ¶ 18.

to include a defined lunch period.  Id. ¶¶ 23-24.  Principal Mercedes also noticed that Plaintiff was not teaching a full twenty-five periods as the collective bargaining agreement between DOE and Plaintiff's Union, allowed, so he also increased her teaching periods from twenty-two to twenty-five periods. Id. ¶¶ 26. Plaintiff's schedule was changed again on November 6, 2013, as Plaintiff was reassigned from greeting the students as the buses dropped them off for school to covering a homeroom class for another teacher. Id. ¶ 28.  The next change in Plaintiff's schedule occurred two years later, on September 15, 2015, when her lunch period was switched from fifth to sixth period. See Def. 56.1 ¶ 29.

### C.  Elimination of Art Room and Miscommunications with Plaintiff

Furthermore, Plaintiff complains that on June 2, 2015, Principal Mercedes eliminated the art classroom as the school needed it for "multipurpose use." Def. 56.1 ¶ 50. At the same time, Principal Mercedes had to eliminate the science lab. Id. ¶ 52.  Plaintiff was provided a storage closet for her art supplies and, beginning the following school year, Plaintiff had to push into other teachers' classrooms with her supplies to teach her lessons. Id., ¶¶ 53-54. Principal Mercedes offered to co-locate the music and art classrooms, but Plaintiff refused. Id., ¶¶ 59-60. After her classroom was eliminated, Plaintiff requested a personal key to MS 390's elevator to transport her supplies, which she was granted. Id., ¶¶ 64-76. However, in May, 2017, Principal Mercedes recalled all the personal elevator keys at MS 390 as the school was redoing the elevator's key system and the old keys would no longer work. Id., ¶¶ 74-76.  Plaintiff, like all other teachers, was allowed to use the universal elevator key in the main office until new keys were issued. Id., ¶ 76.

Next, during the 2014-2015 school year Principal Mercedes and Plaintiff had a series of miscommunications.  On January 15, 2015, Plaintiff alleges that she had a meeting with

Principal Mercedes regarding his concerns with Plaintiff's "body language" and how she would fit in with new initiatives that Principal Mercedes was going to bring to MS 390. <u>See</u> Def. 56.1 ¶¶ 36-37.  Plaintiff left this meeting feeling as though Principal Mercedes wanted her out of MS 390. <u>Id.</u> ¶ 38.  Five days later, Plaintiff met with Principal Mercedes and her Union Representative, to discuss their previous meeting and Plaintiff's future at MS 390. <u>Id.</u> ¶¶ 42-45.  Principal Mercedes informed Plaintiff that she had misunderstood him, and that he wanted Plaintiff to stay at MS 390. <u>Id.</u> Another miscommunication occurred in March, 2015, when Principal Mercedes allowed Plaintiff to attend a book making competition workshop, but could not afford to pay Plaintiff per session for creating this competition at MS 390.  <u>See</u> Def. 56.1 ¶¶ 92-96. Plaintiff refused to conduct this competition without pay.  <u>Id.</u>

### D.  GEAR-UP Program & Plaintiff's Poor Performance

Nevertheless, Plaintiff was afforded another per session income opportunity the following school year.  <u>See</u> Def. 56.1 ¶¶ 98-108. In February, 2016, Plaintiff was hired to work as a Humanities teacher for the GEAR-UP program, which was an afterschool program that Lehman College administered at MS 390. <u>Id.</u> ¶¶ 100-101. Plaintiff was paid per session for her work in this program. <u>Id.</u>  During the 2016-17 school year, Lehman College again administered the GEAR-UP program at MS 390, but changed it from an afterschool program to a Saturday program. <u>Id.</u> ¶ 104. Plaintiff refused to re-apply for this position as she did not want to work weekends. <u>Id.</u>, ¶¶ 107-108. However, two other African-American teachers, Valerie Green and Janet Smith, applied for and were hired to work in this program. <u>Id.</u>, 105.

Next, Plaintiff complains that at the end of the 2016-17 school year, she received two negative informal observation reports. <u>See</u> Def. 56.1 ¶¶ 109-130. On April 20 and May 19, 2017, MS 390 Assistant Principal Andrea Varona ("AP Varona"), and Principal Mercedes,

respectively, conducted informal observations of Plaintiff's pedagogy and rated her as "Developing" or "Ineffective" in several categories. Id.

Finally, Plaintiff received two letters to her file at the end of the 2016-17 school year for corporal punishment and verbal abuse of students in her care, in violation of Chancellor's Regulations A-420 and A-421. See Def. 56.1 ¶¶ 131-153; see also Chancellor's Regulation A-420, Ex. DD.  The first instance occurred on March 2, 2017, when Plaintiff was teaching her art class and got into an altercation with one of her students who was using a water bottle to distract the class. Id., ¶ 132.  Plaintiff wrestled with the student over the water bottle and admitted to pushing the student. Id. ¶¶ 132, 135, 140. On May 17, 2017, after reviewing the witness statements and Plaintiff's rebuttal, including her statements at a meeting to discuss these allegations, Principal Mercedes substantiated the corporal punishment allegations against Plaintiff and issued her a letter to her personnel file. Id. ¶¶ 141-42.

On June 28, 2017, Principal Mercedes issued Plaintiff a second letter to her personnel file for verbally abusing her students following receipt of her April 20, 2017, observation report. See Def. 56.1 ¶ 143. In this instance, Plaintiff was very upset with AP Varona's observation report and addressed her class about it in a way that was inappropriate, unprofessional and which made her students feel uncomfortable and threatened. Id., ¶¶ 143, 147-48.

On June 22, 2017, Principal Mercedes met with Plaintiff and her Union Representative to discuss these verbal abuse allegations, and after reviewing the claims and Plaintiff's rebuttal, Principal Mercedes substantiated the verbal abuse allegations against Plaintiff and issued her a second letter to her personnel file. Id., ¶¶ 144, 149-153.

On July 1, 2017, Plaintiff retired from MS 390. See Def. 56.1 ¶ 154. Ten days later, Plaintiff dual filed an SDHR and EEOC charge of race and age discrimination against the DOE.

Id., ¶ 155. On January 3, 2018, SDHR issued a "NO PROBABLE CAUSE" determination on

Plaintiff's claims, which the EEOC adopted on April 12, 2018. Id., ¶¶ 158-163.

Plaintiff commenced the instant action on June 18, 2018. See Summons and

Complaint, dated June 18, 2018, Dkt. No. 1.

## ARGUMENT

### POINT I

### MANY OF PLAINTIFF'S CLAIMS ARE TIME-BARRED.

Both Title VII and the ADEA require that a charge of discrimination be filed with

the EEOC within 300 days after the allegedly unlawful employment practice occurred. Robins v.

New York City Bd. of Educ., No. 07 Civ. 3599, 2010 U.S. Dist. LEXIS 61451, *14-15 (S.D.N.Y.

2010), aff'd, 606 Fed. Appx. 630, 631 (2d Cir. 2015)(citing 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C.

§ 626(d)(1)(B).   Claims accruing more than 300 days prior to filing a charge with the EEOC are

time-barred. Riddle v. Citigroup, 449 F. Appx. 66, 69 (2d Cir. 2011).

Here, Plaintiff filed her complaint with the SDHR and EEOC on July 11, 2017.

Def. 56.1 ¶ 155 . Only those acts that occurred within 300 days before July 11, 2017 are actionable.

Thus, Plaintiff's Title VII and ADEA claims arising from any allegedly discriminatory acts prior

to September 14, 2016, are time barred and must be dismissed.  These time barred claims include

the following: (1) Plaintiff's removal from the morning scheduler position at the beginning of the

2013-14 school year – Def. 56.1 ¶¶ 15-21; (2) Plaintiff's complaint during the 2013-14 school

year, that she lacked a defined lunch period, and the subsequent schedule change from teaching

twenty-two to twenty-five teaching periods – Def. 56.1 ¶¶ 22-27; (3) the November 6, 2013,

schedule change in Plaintiff's A.M. bus duty to homeroom coverage – Def. 56.1 ¶ 28; the January

15, 2015, meeting with Principal Mercedes concerning Plaintiff's future at MS 390 – Def. 56.1 ¶¶

- 7 -

36-49; (4) Principal Mercedes' denial of Plaintiff's request to create book making competition for per session pay during the 2014-15 school year – Def. 56.1 ¶¶ 92-96; (5) the denial of portions of Plaintiff's art supplies request during the 2013-14, 2014-15, and 2015-16 school years – Def. 56.1 ¶¶ 77-85; (6) the elimination of Plaintiff's Art Classroom on June 2, 2015 – Def. 56.1 ¶ 50; (7) Plaintiff's change in lunch period on September 15, 2015 – Def. 56.1 ¶¶ 29-32; and (8) Plaintiff's complaint that she was forced to sit in the hallway on parent/teacher conference night at the beginning of the 2015-16 school year – Def. 56.1 ¶ 55-58. Accordingly, these claims are time-barred and must be dismissed.

## POINT II

### THERE ARE NO TRIABLE ISSUES OF FACT CONCERNING PLAINTIFF'S DISCRIMINATION CLAIMS.

#### A.  Title VII and ADEA– Disparate Treatment Standard

To establish a prima facie case of discrimination under Title VII and ADEA, a plaintiff must show: (1) that she was a member of a protected class; (2) she was qualified for the position; (3) that she suffered an adverse employment action; and (4) circumstances that give rise to an inference of discrimination.  See Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985) (ADEA); McDonnell Douglas Corp., v. Green, 411 U.S. 792, 802 (1973); Ruiz v. County of Rockland, 609 F.3d 486, 491-92 (2d Cir. 2010); Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005)(same standard applied to Title VII and ADEA discrimination claims).

Should Plaintiff meet these burdens of production, the burden then shifts to Defendants to show the existence of a legitimate, non-discriminatory reason for the actions taken. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993); Woodman, 411 F.3d at 76. Defendants' burden at this stage is minimal.  Defendants can satisfy their burden by offering any legitimate, non-discriminatory reason in support of their actions, and it need not persuade the Court

that it actually was motivated by the proffered reason.  See Fisher v. Vassar College, 114 F.3d 1332, 1335-36 (2d Cir. 1997) (en banc).

Once Defendants articulate such a reason, "the presumption raised by the *prima facie* case is rebutted, and drops from the case." Hicks, 509 U.S. at 511; Woodman, 411 F.3d at 76.  The burden then shifts to Plaintiff to establish that Defendants' proffered reasons are a pretext for discrimination.  See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-56 (1981). At this stage, merely proving that Defendants' reasons are false or contrived does not suffice to show pretext; rather, Plaintiff must demonstrate that the record taken as a whole is sufficient to support a reasonable inference that Defendants' actions were motivated by discriminatory "animus or ill-will." Grillo v. N.Y. City Transit Auth., 291 F.3d 231, 234 (2d Cir. 2002); McPherson v N.Y. City Dep't of Educ., 457 F.3d 211, 216 (2d Cir. 2006).

**B.  Disparate Treatment - No Adverse Action**

To constitute an adverse employment action, the action complained of must result in a "materially adverse change in the terms and conditions of [Plaintiff's] employment." Torres v. Pisano, 116 F.3d 625, 640 (2d Cir. 1997). "To be 'materially adverse' a change in working conditions must be more disruptive than a mere inconvenience or alteration in job responsibilities." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)(citation omitted). Indeed, the alleged adverse action must consist of more than Plaintiff's mere conjecture and speculation. See Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999), cert. denied, 530 U.S. 1242 (2000). In the present matter, Plaintiff complains of the following: (1) she received two negative Informal Observation Reports; (2) she received two letters to her personnel file for pushing a student and confronting her students about one of the negative Informal Observation Reports; (3) her schedule was changed to require Plaintiff to pick up students from lunch and escort

them to their next class; (4) she was asked to return an elevator key; and (5) she was denied art supplies. See Def. 56.1 ¶¶ 33-35, 74-85, 109-153.

Courts in this Circuit have consistently held that "a negative performance review, without more, does not represent an adverse employment action." Chung v. City Univ. of New York, 605 F. App'x 20, 22 (2d Cir. 2015) (citation omitted); Hawana v. City of New York, 230 F. Supp. 2d 518, 528 (S.D.N.Y. 2002); Figueroa v. City of New York, 198 F. Supp. 2d 555, 568 (S.D.N.Y. 2002)(collecting cases). Indeed, "[i]t hardly needs saying that a criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action." Weeks v. N.Y. State, 273 F.3d 76, 86 (2d Cir. 2001).

In this case, Plaintiff testified that the two observation reports at issue had no effect on her salary or duties. See, e.g., Pl. Dep., Ex. C, 84:22-85:7, (noting that the Informal Observation Reports did not affect her duties or salary). These Informal Observation Reports articulated specific areas of Plaintiff's pedagogy that were deficient, and indicated that Plaintiff was expected to perform those duties in a more satisfactory manner. See Informal Observation Report, Ex. V; see also Informal Observation Report, Ex. W. Criticism such as this, unaccompanied by changes in pay or duties, but rather with suggestions for corrective action, cannot constitute an adverse employment action upon which a claim of discrimination can be based. See Weeks, 273 F.3d at 86; Figueroa, 198 F. Supp. 2d at 568 ("Courts have held that negative evaluations, without any accompanying adverse results are not cognizable.").

Likewise, the fact that Plaintiff received two letters to file for corporal punishment and verbal abuse is insufficient to establish an adverse action. See Def. 56.1 ¶¶ 131-53; Letter to File, dated May 17, 2017, Ex. BB; see also Letter to File, Ex. CC. These letters fail to establish an

adverse action for two reasons. First, Plaintiff did not suffer any attendant consequences due to these letters to her file. See Def. 56.1 ¶¶ 142, 152-53. Indeed, these letters, which were issued after interviewing witnesses and providing Plaintiff an opportunity to respond to the allegations with her Union Representative, had no effect on the terms and conditions of Plaintiff's employment. Id. ¶¶ 141-42, 149-53.  Accordingly, these two letters to Plaintiff's personnel file fail to constitute adverse employment actions.

Second, "an employee does not suffer a materially adverse change in the terms and conditions of [their] employment where the employer merely enforces its existing disciplinary polices." Joseph v. Levitt, 465 F.3d 87, 91 (2d Cir. 2006) (subjecting plaintiff to standard policy not a materially adverse change to plaintiff's employment).  Principal Mercedes stated in both letters that Plaintiff pushing a student and berating her class for her poor performance on the April 20, 2017, informal observation, constituted serious "violation[s] of Chancellor's Regulation A-420."  See Letter to File, Ex. V, at DEF_000071; see also Letter to File, dated June 28, 2017, Ex. W, at DEF_000105.  The Principal was merely enforcing the Chancellor's Regulations in both instances, and, therefore, these letters to file do not constitute adverse employment actions. See Chancellor's Regulation A-420, Ex. DD;  see also Joseph, 465 F.3d at 91.

Next, "being assigned undesirable work duties and unfavorable work schedules are insufficient to establish adverse employment action, since they do not have a material impact on the terms and conditions of [P]laintiff's employment." Figueroa v. N.Y. City Health & Hosps. Corp., 03 Civ. 9589 (NRB), 2007 U.S. Dist. LEXIS 58342, at *12 (S.D.N.Y. Aug. 7, 2007); Forest v. New York State Office of Mental Health, 672 F. App'x 42, 45 n.3 (2d Cir. 2016)("assignments within an employee's job description are generally not materially adverse."). Thus, Plaintiff's

February 1, 2017, change in schedule requiring Plaintiff to pick up students from lunch does not constitute an adverse action. SAC ¶ 42.

Moreover, Plaintiff testified that it was at her own discretion as to whether she would pick up the students at lunch and never suffered any adverse action when she refused to perform these duties. See Pl. Dep., Ex. C, 261:9-25. Therefore, this minor change to Plaintiff's schedule does not constitute an actionable adverse employment action. See Forest, 672 F. App'x at 45, n.3; Makinen, 53 F. Supp. 3d at 692-93; Figueroa, 2007 U.S. Dist. LEXIS 58342, at *12.

Next, the fact that Principal Mercedes requested that Plaintiff return her personal elevator key in May, 2017, does not rise to the level of an adverse employment action. See Def. 56.1 ¶¶ 74-76. There is no evidence in the record that this resulted in a diminution in Plaintiff's pay, benefits, responsibilities, or performance ratings. This was merely an inconvenience as Plaintiff now was forced to use the elevator key left in the MS 390 main office. Id. Therefore, such a trivial request does not constitute an adverse action.

Finally, the school administration's denial of parts of Plaintiff's art supplies is not an actionable adverse employment action. See Def. 56.1 ¶¶ 83-85; see Lam v. N.Y.C. Dep't of Educ., No. 18 Civ. 2756 (PGG), 2019 U.S. Dist. LEXIS 90707, at *29-30 (S.D.N.Y. May 29, 2019)(denial of plaintiff's supply request not an adverse employment action as she failed to allege that the denied supplies "were essential to her job performance"); Lawson v. N.Y.C. Bd. of Educ., No. 05 Civ. 825 (JSR)(HBP), 2011 U.S. Dist. LEXIS 25202, at *53-54, n.6 (S.D.N.Y. Feb. 25, 2011)(holding that denial of non-essential equipment is not an adverse employment action). There is no evidence to suggest that Plaintiff suffered any adverse performance evaluation or diminution in responsibilities, pay, or benefits due to not having these supplies. Accordingly, these allegations fail to establish adverse employment actions under Title VII or the ADEA.

### C.  Disparate Treatment – No Inference of Discriminatory Intent

"A plaintiff may establish the necessary inference of racial discrimination by proffering either direct or indirect evidence of discriminatory intent. Direct evidence of discrimination would exist in the form of disparaging comments regarding a plaintiff's protected class. Indirect evidence of racial discrimination could include evidence that similarly situated comparators outside of Plaintiff's protected class were treated more favorably than the plaintiff." Watson v. Richmond Univ. Med. Ctr., 408 F. Supp. 3d 249, 262 (E.D.N.Y. 2019) (internal citations omitted); see also Judith Mills v. S. Conn. State Univ., 519 F. App'x 73, 75 (2d Cir. 2013) (Summary Order); Shumway v. United Parcel Serv., 118 F.3d 60, 63 (2d Cir. 1997).  For a comparator to be similarly situated, they must be similar "in all material respects." Shumway, 118 F.3d at 63 (citations omitted).  This requires Plaintiff to show that the co-employee, "(1) [was] subject to the same performance evaluation and discipline standards; and, (2) engaged in comparable conduct." Ruiz, 609 F.3d at 493-94 (2d Cir. 2010)(quoting Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000)).  Indeed, Plaintiff must show that the supposedly similarly situated employee is in fact so similarly situated, and shares so many of the characteristics with [] [P]laintiff, that it would be fair to infer that the difference in treatment may be attributable to discrimination." Canales-Jacobs v. N.Y.S. Off. Of Court Admin., 640 F. Supp. 2d 482, 504 (S.D.N.Y. 2009).

Here, there is no direct or indirect evidence that Plaintiff's race or age motived DOE to take any alleged adverse action against Plaintiff, including, but not limited to, denying Plaintiff per-session income opportunities, denying Plaintiff art supplies, and requesting Plaintiff return her personal elevator key.  See Def. 56.1, ¶¶ 74-76, 83-91, 98-108.

First, Plaintiff complains that she was denied the opportunity to earn per session income in the GEAR-UP program in September 2016 due to her race and age.  See SAC ¶¶ 38-39;

Pl. Dep., Ex. C, 203:1-7; <u>see also</u> Def. 56.1, ¶¶ 98-108. However, it is undisputed that the program changed from an afterschool to a Saturday program during this time, and Plaintiff testified that she refused to work on Saturdays and did not pursue this opportunity any further once she was notified of this schedule change. <u>See</u> Pl. Dep., Ex. C, 204:6-8, 205:2-5, 207:12-18; Def. 56.1, ¶¶ 102-108. Plaintiff speculates, without providing any evidence, that the MS 390 administration changed the schedule of this program to deprive Plaintiff of this per session income opportunity and to give Plaintiff's position to two other MS 390 teachers, Ms. Valerie Green and Ms. Janet Smith. <u>See</u> Pl. Dep., Ex. C, 205:10-22.  However, Plaintiff testified that Ms. Green a literacy teacher, was also Black, and about Plaintiff's age. <u>Id.</u> at 206:7-24.  She also testified that Ms. Smith was a Black, math teacher, but was unsure about her age.  <u>Id.</u> at 207:19-208:7.  Thus, by Plaintiff's own admission, race and age played no role in the decision to change the schedule of the GEAR-UP program and deny Plaintiff this per session opportunity as the two teachers that were hired were of the same racial identity as Plaintiff and were of similar ages to Plaintiff.  <u>Id.</u> at 206:7-24, 207:19-208:7; <u>see</u> <u>South v. Cont. Cas. Co.</u>, No. 17 Civ. 5741, 2018 U.S. Dist. LEXIS 167907, at *25-26 (S.D.N.Y. Sep. 27, 2018) (citing cases holding that favorable treatment of employees in the same protected group undermines inference that protected characteristic motivated employment decisions).

Next, Plaintiff testified that during the 2016-17 school year, Principal Mercedes denied her per session income for the afterschool portfolio work she did with five or six students due to her race and age. <u>See</u> SAC ¶ 22; <u>see also</u> Pl. Dep., Ex. C, 181:5-13.  However, Plaintiff fails to identify any similarly situated teacher, who did not share Plaintiff's race or age and was afforded this opportunity over Plaintiff.  The record shows that Plaintiff was the only art teacher at MS 390 until she retired and was the only teacher who held these afterschool portfolio workshops. <u>See</u> Pl.

Dep., Ex. C, 190:15. Therefore, this allegation fails to establish a <u>prima facie</u> case of discrimination due Plaintiff's race and age. Moreover, as set forth in Point II(D), below, Principal Mercedes testified that the MS 390 budged could not sustain a program with such low student participation. <u>See</u> Def. 56.1 ¶¶ 87-89. Thus, this claim also fails.

Further, the record is devoid of any facts showing that during the 2016-17 school year the MS 390 administration denied Plaintiff's full request for art supplies due to her race or age. <u>See</u> Def. 56.1 ¶¶ 83-85. Principal Mercedes allocated Plaintiff $1000 each year and the Union provided her with a Teacher's Choice program, where she could purchase materials and the Union would reimburse Plaintiff. <u>See</u> Pl. Dep., Ex. C, 217:6-221:6; <u>see also</u> Mercedes Dep., Ex. E, 220:1-11. Plaintiff also had access to a DOE warehouse she could go to and pick supplies up for free. <u>See</u> Pl. Dep., Ex. C, 220:1-11. Plaintiff fails to identify any younger, Hispanic teacher who, during the 2016-17 school year, was provided more funding that Plaintiff. This is fatal to Plaintiff's <u>prima facie</u> case of race and age discrimination.

Finally, Plaintiff complains that she was required in May, 2017, to return her personal elevator key to Principal Mercedes. <u>See</u> SAC ¶ 47. At the same time, Plaintiff testified that in May 2017, Principal Mercedes made an announcement to the whole school over the intercom that "anyone who has an elevator key needs to bring it downstairs right now." <u>See</u> Pl. Dep., Ex. C, 258:8-17. Plaintiff does not identify that any other teacher, let alone a younger, Hispanic teacher, was permitted to keep their elevator key at this time. Therefore, this allegation also fails to state a discrimination claim.

Essentially, Plaintiff's discrimination claims are "nothing more of a false syllogism: (1) I am (insert name of protected class); (2) something bad happened to me at work; (3) therefore, it happened because I am (insert name of protected class)." <u>Bermudez v. City of</u>

New York, 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011).  In reality, and as addressed in Point II(D), infra, Plaintiff was simply a disgruntled teacher, who simply did not get every amenity she demanded due to MS 390's budgetary constraints.  Accordingly, Plaintiff cannot establish that DOE took any of the above-mentioned adverse actions against Plaintiff due to her race or age, and, in turn, cannot establish a prima facie case of discrimination and her discrimination claims must be dismissed.

### D.  Disparate Treatment – Defendants' Legitimate, Non-Discriminatory Reasons

Here, Plaintiff makes conclusory allegations that Defendants denied her per session opportunities and requests for art supplies, and recalled her personal elevator key because of discriminatory animus.  However, these claims fail because Defendants have articulated legitimate, non-discriminatory reasons for all of their actions.  Defendants' burden in this regard is minimal as Defendants must merely provide some explanation for the actions Plaintiff alleges to be discriminatory.  See Bickerstaff, 196 F.3d at 446.

As a preliminary matter, Defendants did not deny Plaintiff the opportunity to work in the GEAR-UP program during the 2016-17 school year.  Lehman College administered this program and MS 390 merely provided the staff and facility for Lehman College to use.  See Def. 56.1 ¶¶ 98-108.  Indeed, Lehman College hired the MS 390 teachers for this program and was responsible for paying them.  See e.g. GEAR-UP Application, Ex. P.  There is no evidence that Defendants' played any role in stopping Plaintiff from pursuing this per session income opportunity. To the contrary, the evidence shows that MS 390 Guidance Counselor Guillermina Ceballos tried to facilitate Plaintiff's hiring with Lehman College, but after Lehman College changed the program's schedule from afterschool to Saturday, Plaintiff refused to pursue this opportunity any further.  See Def. 56.1 ¶¶ 104-108.  Therefore, Plaintiff's failure to obtain per session income through the GEAR-UP program was not due to any action taken by Defendants,

but Plaintiff's own resistance to working on Saturdays. Id. Plaintiff cannot sabotage her own chances at earning the per session income she desired and then turn and blame Defendants.

Now considering the actions Defendants did take against Plaintiff, it is well established that budgetary constraints constitute a legitimate business reason for denying an employee additional supplies or compensation in the course of their employment. See In re N.Y. City Dep't of Educ., No. 15 Civ. 7150 (AJN), 2019 U.S. LEXIS 54430, at *19 (S.D.N.Y. Mar. 29, 2019)(Defendant's denial of plaintiff's overtime request due to budget constraints constituted a legitimate, non-discriminatory reason); Garcia v. Henry St. Settlement, 501 F. Supp. 2d 531, 540 (S.D.N.Y. 2017); Duncan v. New York City Transit Auth., 127 F. Supp. 2d 354, 362 (E.D.N.Y. 2001)("Defendants have shown a legitimate business reason…budgetary constraint.").

In this case, Defendants only took the actions that Plaintiff complains of due to MS 390's budgetary constraints and maintenance being done on the school's elevator.  First, Plaintiff complains that from the 2013-14 school year until her retirement at the end of the 2016-17 school year Principal Mercedes denied her the opportunity to earn per session income helping students prepare art portfolios.  See Pl. Dep., Ex. C, 180:24-181:13.  Principal Mercedes explained that after the 2012-13 school year MS 390 could no longer afford to pay Plaintiff for this work as not enough students were interested in it.  See Mercedes Dep., Ex. E, 68:12-18. Normally, the student to teacher ratio for paid afterschool activities was between 12-1 to 15-1, and Plaintiff's program would at most reach a ratio of 6-1. Id.; see Pl. Dep., Ex. C, 181:7-13.  With so few students Principal Mercedes determined that it was not fiscally responsible to fund this afterschool portfolio program. See Mercedes Dep., Ex. E, 68:12-18.

Indeed, the record clearly shows that Principal Mercedes informed Plaintiff each year that "there[] [was] no money" for Plaintiff's afterschool portfolio program. See Pl. Dep., Ex.

C, 181:7-13, 182:7-15.  There is no evidence that any other teacher at MS 390 was afforded a similar per session income opportunity with so few students, or that the Principal was motivated by discriminatory animus.  It must be noted that Plaintiff does not even "remember if [she] asked [Principal Mercedes]" for this per session income during the 2016-17 school year. Id., 181:21-24.  Therefore, Defendants' budgetary concerns constitute legitimate, non-discriminatory, business reasons for denying Plaintiff the per session money she request for her afterschool portfolio program. See In re N.Y. City Dep't of Educ., supra; Garcia, supra; Westbrook, supra.

   Further, Plaintiff claims that in 2016-17 Principal Mercedes denied Plaintiff some of the art supplies she requested, but does not specify which supplies. SAC ¶ 21. Principal Mercedes provided Plaintiff with a $1000 art supplies budget each year, which was increased during the 2016-17 school year to $1200 due to an extra allocation from the Mayor's Art Fund. See Pl. Dep., Ex. C, 216:21-25, 217:18-24, 219:18-19. Plaintiff's Union contributed an extra $125 through its Teacher's Choice program that Plaintiff could use to be reimbursed for purchasing art supplies.  See Pl. Dep., Ex. C, 219:14-25; see also Mercedes Dep., Ex. E, 242:9-13, 243:7-22.  In addition to these funds, Plaintiff had access to a DOE warehouse in Manhattan, New York, where she could pick up art supplies free of charge. See Pl. Dep., Ex. C, 220:1-9.

   Plaintiff testified that when she asked for more art supplies than the school could afford, Principal Mercedes would inform Plaintiff that the reason why she was denied funding was due to MS 390's budgetary constraints. See e.g., Emails, Ex. S; Pl. Dep., Ex. C, 231:20-23. Overall, Plaintiff received art supplies each year, just not the exorbitant amount of supplies she demanded.  Id.; see Mercedes Dep., Ex. E, 239:9-15.  As a sign of MS 390's budget constraints, Plaintiff testified that she was not the only teacher at MS 390 that believed they needed more supplies, "[e]veryone always need[ed] supplies." Pl. Dep., Ex. C, 229:6.  Again, these budgetary

concerns are legitimate, non-discriminatory reasons to deny Plaintiff some of the art supplies she requested.

Plaintiff's allegations that the elevator key was taken from her due to her race and age are similarly without merit. In May 2017, Principal Mercedes asked anyone with a personal elevator key to return their key as the school needed to "re-key" the elevator. See Mercedes Depo., Ex. C, 190:2-5. Once this was done the elevator keys were reissued to Plaintiff. Id., 190:8. In the meantime, Plaintiff, like all MS 390 teachers, had access to the elevator key in the main. Id., 189:11-20.

These aforementioned reasons clearly demonstrate that Defendants' decision to deny Plaintiff art supplies outside the school's budget, deny Plaintiff's request for per session pay to teach five or six students after school, and request that Plaintiff return her personal elevator key, were solely due to MS 390's budgetary constraints and maintenance being done on the elevator. These are legitimate non-discriminatory reasons for any and all of the alleged adverse actions taken against Plaintiff. Accordingly, Defendants motion for summary judgment must be granted.

## E. Disparate Treatment - Plaintiff Cannot Establish Pretext

Here, the record evidence clearly demonstrates that Plaintiff's discrimination claims are only supported by her subjective, conclusory beliefs. Indeed, there is ample record evidence that Plaintiff was denied art supplies, per session income, and a personal elevator key due to MS 390's budget constraints and elevator maintenance. See Def. 56.1, ¶¶ 74-76, 83-91, 98-108. Accordingly, Plaintiff cannot point to any record evidence to establish pretext, that is, that Defendants' proffered reasons are "false and that discrimination was the real reason." Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995) (citing Hicks, 509 U.S. at 515) (emphasis in original). Thus, Plaintiff's Title VII and ADEA discrimination claims must be dismissed.

### F. Hostile Work Environment

"To establish a <u>prima facie</u> case of hostile work environment Plaintiff must show that the discriminatory harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and 'that a specific basis exists for imputing' the objective conduct to the employer. It is axiomatic that [Plaintiff] also must show that the hostile conduct occurred because of a protected characteristic." <u>Tolbert v. Smith</u>, 790 F.3d 427, 439 (2d Cir. 2015)(citing <u>Summa v. Hofstra Univ.</u>, 708 F.3d 115, 123-24 (2d Cir. 2013)); <u>Terry v. Ashcroft</u>, 336 F.3d 128, 148 (2d Cir. 2003)(ADEA).

As discussed in Point II(C), (D), and (E), above, there is no record evidence that Defendants denied Plaintiff per session income, supplies, and a personal elevator key due to Plaintiff's race or age. Further, Plaintiff did not once raise any alleged discrimination until after she retired from the DOE. <u>See</u> Def. 56.1, ¶ 155. Nor is there record evidence that these incidents were anything more than episodic, so as not to be actionable under Title VII or the ADEA. <u>See</u> <u>Tolbert</u>, 790 F.3d at 439. The record shows that Defendants merely subjected Plaintiff to the same policies and standards as all the other MS 390 teachers. Notably absent from the record are any racist or ageist comments made towards Plaintiff. Without any evidence in the record to show that the hostile conduct occurred due to any discrimination, Plaintiff's Title VII and ADEA hostile work environment claims must be dismissed. <u>See</u> <u>Judith Mills</u>, 519 F. App'x at 75-76.

Further, Plaintiff's allegations fall far short of demonstrating the sort of severe or pervasive working conditions necessary to establish a hostile work environment under the Title VII and the ADEA. To determine if a work environment is hostile Courts look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating...and whether it unreasonably interferes with an employee's work performance." <u>Leibovitz v. New York City Transit Auth.</u>, 252 F.3d 179, 188 (2d Cir. 2001)(quoting <u>Harris v. Forklift Sys. Inc.</u>, 510 U.S.

17, 23 (1993)).  "Isolated, minor acts or occasional episodes do not," constitute a hostile work environment. Brennan v. Metropolitan Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999).

In this case, the episodic incidents that Plaintiff complains of over the course of four years of her employment fail to meet the severe or pervasive standard to establish a hostile work environment. The changes to Plaintiff's teaching schedule, the negative performance reviews, letters to Plaintiff's file, and denial of specific per-session income opportunities do not constitute a severe or pervasive hostile work environment as a matter of law.  See e.g. Littlejohn v. City of New York, 795 F.3d 297, 321 (2d Cir. 2015)(defendant's wrongful reprimand of plaintiff, increase in plaintiffs work schedule and  heavy scrutiny of plaintiff's performance fail to state a hostile work environment claim); Isbell v. City of New York, 316 F. Supp. 3d 571, 591-92 (S.D.N.Y. 2018)("heavy scrutiny and criticism, discipline for inadequate work product, [and] refusal to authorize overtime…do not state a claim for hostile work environment.").  Nor can Plaintiff rely on the episodic denial of some of her supply requests and the request to return the elevator key to support her hostile work environment claims. See Dowrich-Weeks v. Cooper Square Realty, Inc., 535 Fed. Appx 9, 13 (2d Cir. 2013)(Plaintiff's "allegations of several isolated incidents over the course of a two-year period…do not rise to the level of frequency or severity necessary to establish a hostile work environment.").  Accordingly, Plaintiff's hostile work environment claims must be dismissed.

**G.  Plaintiff's Constructive Discharge Claims Fail as a Matter of Law**

Plaintiff fails to meet the high standard of a constructive discharge claim.  As a preliminary matter, "[c]reation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case."  Pa. State Police v. Sunders, 542 U.S. 129, 149 (2004). Here, Plaintiff fails to sufficiently plead a hostile work environment claim and therefore, likewise, fails to state a constructive discharge claim.  See Point II(B), above.

Even if the Court were to consider Plaintiff's constructive discharge claims, the record is devoid of any evidence rising to the high level of constructive discharge.  To sufficiently state a claim of constructive discharge Plaintiff must plead: "(1) that the employer acted deliberately or intentionally in bringing about the complained of work conditions, and (2) that the conditions were 'intolerable.'" Edwards v. Huntington Union Free Sch. Dist., 957 F. Supp. 2d 203, 213 (E.D.N.Y. 2013).  The conditions created by the employer must be more than unpleasant or difficult.  See Spence v. Maryland Casualty Co., 995 F.2d 1147 (2d Cir. 1993).  Changes to Plaintiff's work assignment, disciplinary letters to file, and poor evaluations do not support a claim of constructive discharge.  See McGann v. City of New York. 12 Civ. 5746 (PAE), 2013 U.S. Dist. LEXIS 43541, *15 (S.D.N.Y. March. 27, 2013) (finding that an employee who resigns rather than responding to disciplinary charges was not constructively discharged); see also Barbagallo v. General Motors Corp., 88 Civ. 1534 (MJL), 1996 U.S. Dist. LEXIS 416 *12-13 (S.D.N.Y. Jan. 16, 1996) (citing Spence, 995 F.2d at 1156 ("dissatisfaction with [the] nature of assignments, disagreements with evaluations, and difficult working conditions [are] insufficient to prove constructive discharge.")).

Additionally, an employee cannot assert a constructive discharge claim if there was any other avenue for avoiding leaving work.

> [C]ourts in this circuit generally have refused to find a constructive discharge where an employee had an avenue through which [s]he could seek redress for the allegedly "intolerable" work atmosphere… but failed to take advantage thereof.

Early v. Wythe Pharms., Inc., 603 F. Supp. 2d 556, 583 (S.D.N.Y. 2009) (quoting Silverman v. City of New York, 216 F. Supp. 2d. 108, 115 (E.D.N.Y. 2002)); Spence, 995 F.2d at 1157; McGann, 2013 U.S. Dist. LEXIS 43541 at *15 (collecting cases); see Bailey v. New York City

Board of Education, 536 F. Supp. 2d 259, 266 (E.D.N.Y. 2007) (no actionable constructive discharge claim where plaintiff chose retirement rather than face disciplinary charges).

Here, Plaintiff has failed to plead that her working environment was so intolerable that a reasonable person would have felt compelled to resign. Plaintiff complains of changes to her class schedule, classroom assignment, as well as, denial of some per session income and supplies, and poor evaluations and disciplinary letters to file. These allegations as a matter of law, do not rise to a level of constructive discharge. See Spence, 995 F.2d at 1156; McGann, 2013 U.S. Dist. LEXIS 43541 at *15; see also Barbagallo, 1996 U.S. Dist. LEXIS 416 at *12-13.

Moreover, Plaintiff failed to take most of the avenues available to her to redress her allegedly intolerable work environment. Plaintiff was a tenured teacher and was entitled to very extensive procedures before being disciplined. See N.Y. Educ. L. § 3020-a. Plaintiff also could have sought to transfer schools, but instead chose to voluntarily retire. Plaintiff is merely a disgruntled employee who chose to retire rather than improve her pedagogy and work within the MS 390 budgetary constraints. These allegations are grossly insufficient to establish a constructive discharge claim. Accordingly, Plaintiff's constructive discharge claims must be dismissed.

### POINT III

### THERE ARE NO TRIABLE ISSUES OF FACT FOR ANY OF PLAINTIFF'S RETALIATION CLAIMS.

To establish a prima facie case of retaliation under Title VII and the ADEA Plaintiff must demonstrate that "(1) she engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse [employment] action; and (4) there was a causal connection between the protected activity and that adverse [employment] action.'" Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C., 716 F.3d 10, 14 (2d Cir. 2013); Kessler

v. Westchester County Dep't of Soc. Servs., 461 F.3d. 199, 205-06 (2d Cir. 2006)(applying the same retaliation standard to Title VII and ADEA claims).

   In this case, Plaintiff's retaliation claims are fatally deficient because the only protected activity Plaintiff engaged in was on July 11, 2017, when she dual filed her SDHR and EEOC discrimination charge against the DOE. See Def. 56.1, ¶ 155. This was ten days after Plaintiff retired from the DOE on July 1, 2017. Id., ¶¶ 154-55. Given that the alleged actions of which she complains took place while she was still employed by DOE, and *before* she engaged in a protected activity, Plaintiff's retaliation claims must be dismissed. See McAllister v. Queens Borough Pub. Library, 309 Fed. App'x 457, 459 (2d Cir. 2009) (summary order)(dismissing retaliation claim where adverse action preceded protected activity).

   Even assuming, arguendo, that Plaintiff can establish a prima facie case of retaliation, the burden of production shifts to Defendants to demonstrate that a legitimate, non-retaliatory reason existed for their actions.  See Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993). Defendants' budgetary constraints is such a legitimate, non-retaliatory reason. See e.g. In re N.Y. City Dep't of Educ., 2019 U.S. LEXIS 54430, at *19 ("Plaintiff [] acknowledged that she was informed that there was no budget for overtime. Defendant [] has therefore met his burden by presenting a legitimate, non-discriminatory [and non-retaliatory] reason for Plaintiff's adjustment of overtime.").  Once Defendants articulate the legitimate, non-retaliatory reasons, the burden shifts to Plaintiff to prove that the proffered reasons are pretext for retaliation.  Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

   Here, for the same reasons stated above in Point II(D), Defendants have clearly articulated legitimate, non-retaliatory reasons for the actions they took due to budgetary constraints

and elevator maintenance.  Plaintiff cannot demonstrate that these reasons are false, and that the real reason was retaliation. Id. Therefore, Plaintiff's retaliation claims must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion for summary judgment in its entirety, deny all relief requested by Plaintiff, enter judgment for Defendants, and grant Defendants costs, fees, and disbursements together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
     May 22, 2020

**JAMES E. JOHNSON**
Corporation Counsel of the
  City of New York
Attorney for Defendants
100 Church Street, Room 2-138
New York, New York 10007-2601
(212) 356-1654


By:              /s/
                  Isaac S. Baskin
          Assistant Corporation Counsel

**IVÁN A. MÉNDEZ, JR.,**
**ISAAC S. BASKIN,**
  Of Counsel