18 CIV. 5487 (KPF)(KHP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

─────────────────────────────────

HARRIET HAREWOOD,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION; ROBERT
MERCEDES, in his Capacity as PRINCIPAL OF MIDDLE
SCHOOL 390 and INDIVIDUALLY; ANDREA VARONA, in
her Capacity as ASSISTANT PRINCIPAL OF MIDDLE
SCHOOL 390 and INDIVIDUALLY,

Defendants.

─────────────────────────────────

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

─────────────────────────────────

**GLASS HARLOW & HOGROGIAN LLP**
Attorneys for Plaintiff Harriet Harewood
One Blue Hill Plaza, #1509
Pearl River, NY 10965

Bryan D. Glass, Esq.
Tel: 212-537-6859
bglass@ghnylaw.com

Served   June 30, 2020

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS .................................................................................................. 5

    2013-14 School Year ................................................................................................ 5

    2014-15 School Year ................................................................................................ 7

    2015-16 School Year .............................................................................................. 10

    2016-17 School Year .............................................................................................. 12

THE STANDARD FOR SUMMARY JUDGMENT ..................................................... 18

POINT I ............................................................................................................................. 20

MULTIPLE ADVERSE ACTIONS AGAINST MS. HAREWOOD ARE NOT TIME-BARRED AND A PATTERN OF PRIOR DISCRIMINATORY ACTIONS AGAINST HER DEMONSTRATE AN ONGOING HOSTILE WORK ENVIRONMENT BASED ON AGE AND RACE DISCRIMINATION. ....................................................................................... 20

POINT II ............................................................................................................................ 21

THERE ARE MATERIAL ISSUES OF FACT THAT MS. HAREWOOD SUFFERED DISPARATE TREATMENT DUE TO RACE AND AGE DISCRIMINATION. ............. 21

    A.    Standard in Discrimination Cases for Disparate Treatment Claims.................. 21

    B.    Timely Adverse Actions and Disparate Treatment Based on Age and Race ...... 22

    C.    There Are Material Issues of Fact As To Whether Defendants Had Legitimate Non-Discriminatory Reasons For Their Actions Or Their Actions Were A Pretext For Age and Race Discrimination. ............................................................................... 25

POINT III .......................................................................................................................... 26

MS. HAREWOOD WAS SUBJECT TO A RELENTLESS HOSTILE WORK ENVIRONMENT SIMILAR TO HER OLDER NON-HISPANIC COLLEAGUES WHICH LED TO HER CONSTRUCTIVE DISCHARGE AND PREMATURE RETIREMENT AT LEAST THREE YEARS EARLIER THAN SHE HAD PLANNED TO WORK FOR THE NYCDOE. ......................................................................................................................... 26

POINT IV ........................................................................................................................... 27

SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR RETALIATION SHOULD BE DENIED......................................................................................................................... 27

CONCLUSION ................................................................................................................. 29

i

# TABLE OF AUTHORITIES

## *Cases*

*Bernstein v. NYCDOE,*
   19 Civ. 11816 (SDNY) ................................................................................. 26

*Briggs v. Women in Need, Inc.,*
   819 F. Supp. 2d 119 (E.D.N.Y. 2011) .......................................................... 21

*Browne v. City Univ. of New York,*
   419 F.Supp.2d 315 (E.D.N.Y. 2005),
   *aff'd sub nom., Browne v. Queens Coll. City Univ. of New York,*
   202 F. App'x 423 (2d Cir. 2006) .................................................................. 28

*Burlington Northern & Santa Fe Railway v. White,*
   543 U.S. 53 (2006) ....................................................................................... 27

*Dawson v. Bumble & Bumble,*
   398 F.3d 211 (2d Cir. 2005) ......................................................................... 21

*DeMarco v. CooperVision, Inc.,*
   369 F. App'x 254 (2d Cir. 2010) .................................................................. 21

*Demoret v. Zegarelli,*
   451 F.3d 140 (2d Cir. 2006) ......................................................................... 28

*Fahmy v. Duane Reade, Inc.,*
   No. 04-CV-1798, 2006 U.S. Dist. LEXIS 37703,
   2006 WL 1582084, at *10 (S.D.N.Y. June 9, 2006) .................................... 28

*Feingold v. State of New York,*
   366 F.3d 138 (2d Cir. 2004) ......................................................................... 18

*Fincher v. Depository Trust & Clearing Corp.,*
   604 F.3d 712 (2d Cir. 2010) ......................................................................... 27

*Gallo v. Prudential Residential Servs.,*
   22 F.3d 1219 (2d Cir. 1994) ......................................................................... 19

*Herling v. N.Y.C. Dep't of Educ.,*
   No. 13-cv-5287, 2014 U.S. Dist. LEXIS 56442 (E.D.N.Y. Apr. 23, 2014) ........... 28

*Kerzer v. Kingly Mfg.,*
   156 F.3d 396 (2d Cir. 1998) ................................................................... 21, 22

*McCowan v HSBC Bank USA, N.A.,*
   689 F Supp 2d 390 (E.D.N.Y. 2010) ........................................................ 19

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973) ................................................................................. 21

*Murray v. NYCDOE,*
   15 CV 3191 (EDNY) ................................................................................ 26

*Price Waterhouse v. Hopkins,*
   490 U.S. 228 (1989) ................................................................................. 22

*Quaratino v. Tiffany & Co.,*
   71 F.3d 58 (2d Cir. 1995) ........................................................................ 21

*Sesay-Harrell v. N.Y.C. Dep't of Homeless Servs.,*
   2013 U.S. Dist. LEXIS 170160, at *48 (S.D.N.Y. 2013) ........................ 21

*Thompson v. City of N.Y.,*
   2002 U.S. Dist. LEXIS 23675, at *17 (S.D.N.Y. Dec. 6, 2002) ................ 28

*Whidbee v. Garzarelli Food Specialties, Inc.,*
   223 F.3d 62 (2d Cir. 2000) ...................................................................... 18

*Zambrano-Lamhaouhi v. N.Y.C. Bd. of Educ.,*
   866 F. Supp. 2d 147 (E.D.N.Y. 2011) ..................................................... 21

*Zelnik v. Fashion Inst. of Tech.,*
   464 F.3d 217 (2d Cir. 2006) .................................................................... 28

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HARRIET HAREWOOD,

                    Plaintiff,

        – against –

                            18 CIV. 5487 (KPF)(KHP)

NEW YORK CITY DEPARTMENT OF EDUCATION;
ROBERT MERCEDES, in his Capacity as PRINCIPAL
OF MIDDLE SCHOOL 390 and INDIVIDUALLY;
ANDREA VARONA, in her Capacity as ASSISTANT
PRINCIPAL OF MIDDLE SCHOOL 390 and
INDIVIDUALLY,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This Memorandum of Law is submitted on behalf of Plaintiff Harriet Harewood in Opposition to Defendants' Motion for Summary Judgment in this action. There are material issues of fact regarding age and race discrimination and retaliation based on disparate treatment and hostile work environment/constructive discharge that warrant denial of Defendants' summary judgment motion, and further warrant a trial of this matter.

## PRELIMINARY STATEMENT

Plaintiff Harriet Harewood, a New York City middle school art teacher born in 1961 and formerly employed for 33 years with the NYCDOE, all at the same middle school, until June 2017, brings this federal employment discrimination action against Defendant New York City

1

Department of Education ("DOE") and her former Principal Robert Mercedes and Assistant Principal Andrea Varona  at MS 390 in the Bronx, for race and age discrimination and retaliation for filing a jointly filed SDHR/EEOC charge, in violation of Title VII and the Age Discrimination in Employment Act ("ADEA").

At the outset, it should be noted that Principal Mercedes's credibility about his explanations towards his treatment of Ms. Harewood is in serious doubt.  Principal Mercedes has been the subject of at least three federal lawsuits filed by older non-Latino teachers, including by Juanita Murray and Steven Bernstein.  As completely ignored by Defendants in their summary judgment motion, Principal Mercedes and his Hispanic administration have consistently targeted dozens of older non-Hispanic staff members who left or were forced out of his school.  He has lied about statements when he was actually caught on audiotape saying otherwise, chalking his lies to mere "miscommunications".   For example, he lied about asking Ms. Harewood and other older black and white teachers to retire or leave the school, and when he in fact did so.  RM Tr. 76-77, Ex. E to Baskin Declaration.  In addition, he lied about the reasons for taking away Ms. Harewood's arts classroom due to truncation of classes at the school, mixing up the year when this occurred, and which further caused her to travel to three different floors with her art supplies.   RM Tr. 80-84, 99-103, Baskin Decl. Ex. E; August 29, 213 Email, Glass Decl. Ex 46.   Principal Mercedes also lied about an investigation case being closed against Ms. Harewood about corporal punishment in March 5, 2017, and then later he upgraded it to a corporal punishment letter to file against her in May 2017.  Letter, Glass Decl. Ex. 33. Again, Principal Mercedes lied when he told Ms. Harewood when she retired in late June 2017 that she would not be subject to any further  discipline, and then continued to impose discipline against her by mailing her disciplinary notices even after she left the DOE on June 28, 2017. Letter, Glass Decl. Ex. 51. He also continuously obfuscated about

"budgetary issues" as his reason to take art supplies and a permanent classroom away from Ms. Harewood, and insultingly tried to paint Ms. Harewood as merely a "disgruntled" employee. At the same time, he rewarded his Latino colleagues with promotions before they were eligible (including Assistant Principal Varona and his guidance counselor Ceballos) and lucrative per session opportunities.

Particularly compelling to the instant case is that Ms. Harewood had essentially a flawless career for 33 years as an art teacher until Principal Mercedes and AP Varona, under his supervision, issued Ms. Harewood poor ratings and disciplinary letters threatening termination only in the late spring of 2017. RM Tr. 22, Baskin Decl. Ex. E.

Prior to that, Ms. Harewood was highly effective and had no disciplinary letters to file. This barrage of false documentation littering her file caused her such stress and anxiety that she had to take a leave of absence in late May and June 2017, and ultimately constructively caused her to retire.

Also telling is that Principal Mercedes ultimately replaced Ms. Harewood with Ms. Soriano as an art teacher, who was a first-year probationary Latino art teacher in her early 20s. Ms. Soriano started to work as the art teacher in the school in September 2017, immediately after Ms. Harewood retired in June 2017, at a much lower salary on Principal Mercedes's budget. RM Tr. 16, 43, Baskin Decl. Ex. E. In addition, Ms. Maire, the music teacher who also is younger than Ms. Harewood and Hispanic, maintained her own classroom while Ms. Harewood was forced to travel throughout the school without a permanent classroom, and Ms. Maire was given Arts Matters funding that Ms. Harewood did not receive. RM Tr. 20, 66, Baskin Decl. Ex. E.

Principal Mercedes's school secretary also sought to expedite Ms. Harewood's retirement papers while Ms. Harewood was on medical leave in June 2017, by reaching out to her at home to

3

ensure she submitted her retirement papers, and further ensured that funds be released back to his school immediately after Ms. Harewood retired.  RM Tr. 42, Baskin Decl. Ex. E; Email, Glass Decl. 49.  Even after she did so and told her not to worry about any open investigations at their final meeting in late June 2017 before Ms. Harewood retired, Principal Mercedes intimidated her further from reconsidering retirement by continuing disciplinary investigations in 2018 against her even after she left the school.  Principal  Mercedes acknowledged that Ms. Harewood was the most senior and highest paid teacher in the school at the time she retired, with her salary clearly listed on her 2016-17 rating sheet.  RM Tr. 39-41, Baskin Decl. Ex. E.

In sum, Principal Mercedes used the same playbook towards Ms. Harewood as he did towards other older non-Latino tenured faculty who he wanted to remove from his school –*i.e.*, Linda White, Darryl Mcknight, Juanita Murray, Steve Bernstein, Meaghan Canavan and Claire Scesney-Lundahl --relentlessly subject long term discipline-free satisfactory pedagogues to a hostile work environment littered with false disciplinary allegations and letters to file and threats of 3020-a charges and essentially constructively discharge them from his school, or issue them false excessing letters to expel them from his school (*i.e.,* Eileen Kojes, Susan Carr-Lagomarsini and George Swander). Dkt 43, Second Amended Complaint ("SAC") ¶16, Baskin Decl. Ex. A.

Ms. Harewood wholly disputes Defendants' contention that it had legitimate business reasons for engaging in the adverse actions against her.  There are serious issues regarding the credibility of the actions of Principal Mercedes and his administration, and a reasonable jury could find that the purported reasoning behind Principal Mercedes' actions were a pretext for discrimination and retaliation.  Accordingly, Ms. Harewood respectfully requests that summary judgment be denied and this matter proceed to trial.

## STATEMENT OF FACTS

Ms. Harewood was employed as an art teacher within Defendant NYCDOE at MS 390 within District 10 in the Bronx from September 1999 until June 2017, and began working for the NYCDOE in 1983.  HH Tr. 17, 22, Baskin Decl. Ex. C; SAC ¶8, Baskin Decl. Ex. A.   Ms. Harewood's race is black..  Ms. Harewood was born February 11, 1961. Id. ¶¶9-10  As of the time of her retirement/constructive termination, Ms. Harewood was one of the oldest staff members on the staff of the school, with the most seniority in the school.  Ms. Harewood consistently received "Satisfactory" and/or "Effective" and/or "Highly Effective" ratings, observations, and annual evaluations at MS 390 every year of her career up until the 2016-2017 school year.   RM Tr. 43, Baskin Decl. Ex. E; SAC ¶¶ 11-12, Baskin Decl. Ex. A.

### 2013-14 School Year

Since the 2013-2014 school year, Principal Mercedes has been targeting older and/or black teachers and other staff in favor of younger and/or Hispanic staff members at the school.   During the 2013-2014 school year, Principal Mercedes asked several older and/or black teachers to leave the school.  For example, a black general education teacher, who is approximately 64 years old, Linda White, who co-taught with a Dominican special education teacher Mr. Alvarez, received consistently negative ratings during the 2013-2014 school year despite her Dominican counterpart Mr. Alvarez receiving positive ratings.  RM Tr. 44-45, Baskin Decl. Ex. E; SAC ¶¶ 13-14, Baskin Decl. Ex. A.  This ultimately led to Ms. White leaving the school.  Additionally, Principal Mercedes did not ask younger and/or Dominican teachers who had been ineffectively rated to leave the school, including Amanda Dreeban, Victor Vargas, Teodoro Thimodent, and Anna Bermudez. SAC ¶ 14, Baskin Decl. Ex. A.

This pattern continued after the 2013-2014 school year, as Principal Mercedes replaced a significant percentage of the older or black staff in favor of white and/or Dominican and/or younger teachers.  During that school year, Ms. Harewood sat in several staff meetings on or about December and January of the 2013-14 school year, where Principal Mercedes stated that senior staff was "too expensive" and he would reach out to NYCDOE Legal to obtain assistance on having those faculty members removed.  SAC ¶ 15, Baskin Decl. Ex. A. Among the non-Hispanic employees he asked and/or forced to leave the school included George Swander, Myrna Kinkle, Meaghan Canavan, Susan Carr -Lagomarsini, Eileen Kojes, Darryl Mcknight, Juanita Murray, Steve Bernstein, Linda White, and Claire Scesney –Lundahl.  Of the employees targeted, Susan Carr-Lagomarsini, Myrna Kinkle, Darryl McKnight, Juanita Murray, Linda White, and Ms. Harewood are all non-Hispanic black, and only Ms. Carr remained at the school at the time of Principal Mercedes' deposition.   RM Tr. 50-51, Baskin Decl. Ex. E.  He ultimately succeeded in having these staff members removed from their positions through trumped up charges, forced retirement, or forced medical leaves. SAC ¶ 17, Baskin Decl. Ex. A.

Principal Mercedes began his pattern of a hostile work environment towards Ms. Harewood during the 2013-2014 school year. For years, Ms. Harewood had earned extra per session income as the morning scheduler at the school. However, during the 2013-14 school year, Principal Mercedes involuntarily removed this role from Ms. Harewood and gave it to a younger, Dominican individual named Jose Duran, which caused her to lose per session compensation. RM TR. 52-54, Baskin Decl. Ex. E; SAC ¶ 18, Baskin Decl. Ex. A..   The position ultimately was given to his Hispanic social worker Guillermina Ceballos.  RM Tr. 57, 109, Baskin Decl. Ex. E.

Also, during the 2013-2014 school year, Ms. Harewood was not initially given a lunch period, which was a violation of her contractual rights.  RM Tr. 57, Baskin Decl. Ex. E; SAC ¶ 19,

Baskin Decl. Ex. A.  When she complained about the lack of a lunch period to Principal Mercedes, he sent an email to her on or about October 2, 2013, falsely stating that several staff members were complaining about her. Additionally, in retaliation for Ms. Harewood's complaint, Principal Mercedes changed her schedule so that she had 25 teaching periods per week, which was also a violation of her contractual rights to a maximum of 22 teaching periods per week, for which she had been grandfathered in for due to her years of service at the school.  RM Tr. 59-60, Baskin Decl. Ex. E; Article Seven CBA, Glass Decl. Ex 4.

On or about November 6, 2013, Principal Mercedes caused Ms. Harewood's professional AM bus duty—which teachers select at the beginning of the year—to be changed without her permission. This was a violation of the UFT-DOE contract, as an administrator cannot change Circular 6 Professional Activity Options without permission from her union the UFT.

Consistently throughout the 2013-2014 school year until she retired, Principal Mercedes denied Ms. Harewood art supplies budgeted for her by DOE central administration.  Virginia Pou, a Dominican bilingual Guidance Counselor, and Principal Mercedes, told her there was no funding for art and there was funding only for the part-time music teacher Ms. Maire. Email, Glass Decl. Ex. 23.

### 2014-15 School Year

Beginning in the 2014-2015 school year, and continuing through the 2015-2016 and 2016-2017 school years, Ms. Harewood was denied the opportunity to continue to provide 2-3 hours of compensated afterschool per session instruction to help students prepare portfolios for specialized high schools.  RM Tr. 68, Baskin Decl. Ex. E.

In the 2014-15 school year, Principal Mercedes also started targeting his black Assistant Principal.  The black Assistant Principal Cinnamon Harris did not have an office for the school

year 2016-2017.  Her office was taken away and given to the younger Dominican Assistant Principal Andrea Varona.  SAC ¶ 23, Baskin Decl. Ex. A. Principal Mercedes also removed the GEARUP program from AP Harris and gave it to Ms. Ceballos in the fall of 2016. RM Tr. 111, Baskin Decl. Exhibits E, Q, and R.

On January 15, 2015, Principal Mercedes called Ms. Harewood into a meeting, where he told her, in sum and substance, that he no longer needed her at MS 390 as a teacher, and that he and the administration wanted to move forward without her.  Email of meeting appointment, Baskin Decl. Ex. K.  Upset by Principal Mercedes's comments, Ms. Harewood left the meeting. The next day, Ms. Harewood went to her school union representative, who requested a meeting with Principal Mercedes on her behalf.  Email to union representative, Baskin Decl. Ex. L.  During the meeting that followed, Principal Mercedes lied about making the comments about asking her to leave the school, even though he was caught on audiotape doing so.  RM Tr. 170-171, Baskin Decl. Ex. E; audio recording, Glass Decl. Ex. 8.  He also lied about when he told certain staff members to leave the school, mixing up the time of the conversations he had with these non-Latino older staff members.  RM Tr. 171, Baskin Decl. Ex. E. Notably, other black teachers and two white teachers were also asked to leave the school on January 15, 2015, including Tiffany Mack, Elaine Blocker, Bari Martinelli and Christina Gianfrancesco.

On or about March 2015, after attending book-making professional development courses—for which she had previously received permission by Principal Mercedes to attend—Ms. Harewood was denied the opportunity to develop a book-making compensated per session class despite having a commitment letter signed by Principal  Mercedes to attend and make a book for the contest, none of which Principal Mercedes could recall at his deposition.  RM Tr. 77-78, Baskin Decl. Ex. E; Baskin Decl. Ex. M.

On or about March 10, 2015, Ms. Harewood requested certain art supplies for her students. In response, Principal Mercedes informed her that the school did not have the funding for these supplies.  Ms. Harewood knew this to be false, however, because the school had received $1,000 from Arts Studio Funding to be used for art supplies.  Arts Studio Funding was an allocation of $1,000 from the Mayor's Arts Allocation to all eligible art teachers. Emails, Glass Decl. Ex. 20. According to the NYCDOE Division of Human Resources and Office of Data Management, this supplemental funding to schools is for the purchase of studio materials to enhance teaching and learning in visual arts. Eligible teachers, those of regular, active status, and secondary teachers, those who are assigned full time, teaching at least fifty percent of their assigned STARS classes in the arts, and holding NYS certification in art content, are all entitled to receive these funds. Principal Mercedes was advised about this allocation through the School's Allocation Memorandum.  RM Tr. 174, 229, Baskin Decl. Ex. E.

Beginning in June 2015 and throughout the 2015-2016 and 2016-2017 school years, Principal Mercedes eliminated the art classroom at the school (which Ms. Harewood always had for years) and forced Ms. Harewood to push into classrooms throughout the school day in two different buildings with multiple floors with an art cart with limited supplies.  RM Tr. 178, Baskin Decl. Ex. E.  Previously, Ms. Harewood had taught out of a permanent classroom for her entire career.  Ms. Harewood was originally given a room in the gym that was an old shower area. When Ms. Harewood accepted the space, Principal Mercedes said he needed the space back for storage and only placed a few new chairs there.  Joe Lamanucusa, the fireman of the school, eventually found a small closet on the second-floor space and assigned it to Ms. Harewood. Pictures, Glass Decl. Ex. 11.

**2015-16 School Year**

Continuing during the 2015-2016 school year, Ms. Harewood was forced to push into classrooms without a permanent classroom to teach out of her license area. Principal Mercedes assigned Ms. Harewood to teach writing during the 2015-16 school year. During this time, one student wrote humiliating and degrading writing assignments about Ms. Harewood, which the other writing teacher Ms. Smith shared with her. When Ms. Harewood read the writings, she was hurt and deeply humiliated. When she complained and shared copies of the writing assignments to Principal Mercedes and Susan Carr-Lagomarsini, they took no action. The student was never disciplined or removed.

As Ms. Harewood now had to wheel a shopping cart throughout the school with two wheels, and a large laundry bag throughout the school day to different classrooms, she requested use of an elevator key. Baskin Decl. Ex. T, U. Principal Mercedes denied her request. RM Tr. 85-86, Baskin Decl. Ex. E. Other younger and Hispanic staff members, including Tech Specialist Pedro Reyes, IEP/SETTS special education teacher Eleuterio Alvarez, and teacher Maria Adorno, could use the elevator without a doctor's note. Picture, Glass Decl. Ex. 15. Only Ms. Harewood was required to produce a doctor's note.

In so eliminating the art classroom, Principal Mercedes claimed that the art classroom was needed for storage, yet there were numerous other empty rooms left vacant during the entire 2015-2016 and 2016-2017 school years. RM TR. 86, Baskin Decl. Ex. E.

On March 15, 2015, Principal Mercedes scheduled a meeting to engage in conversation about co-locating music and arts instruction in the art room. Principal Mercedes stated that "the music and art rooms are not factored as actual space and have to be used as storage for literacy materials due to arrive over the summer and as multi-purpose rooms in order to meet the

10

enrollment formula that the DOE prescribes."  Only the art room was eliminated, and the part time music teacher, Ms. Andrea Maire, kept her music room in Room 313.   RM Tr. 91, Baskin Decl. Ex. E.  The art room was eventually used as an Integrated Co-teaching ("ICT") room, sixth grade class, and the storage area was used by the teachers to sit and do work.

On or about September 25, 2015, after AP Varona observed Ms. Harewood eating lunch in her colleague and friend's classroom—because there was no cafeteria in the school--her lunch period was inexplicably changed to a different period.  RM Tr. 93, Baskin Decl. Ex. E; Faculty Program Card, Glass Decl. Ex. 6.  As a result, Ms. Harewood had nowhere to eat lunch, as she had no classroom and her colleagues' lunch periods were during different periods than hers.  RM  Tr. 100, Baskin Decl. Ex. E.  Ms. Harewood could not eat with colleagues during her lunchtime and had to eat lunch in her closet, in her car, the auditorium, or on the stairs next to her closet. When she ate lunch in Room 103 for a week, someone reported her, and the room was locked. This room also has a refrigerator with a padlock, and only the Dominican staff members, Jose Duran, Virginia Pou, Liza Ceballos, and social worker Guillermina Ceballos, could use it.  RM  Tr. 113, Baskin Decl. Ex. E. When Ms. Harewood found empty rooms to eat, they were subsequently locked, or notes were posted on the doors not to use the room at her lunchtime. SAC ¶ 35, Baskin Decl. Ex. A.

During the 2015-2016 Parents Teacher Conference night, Principal Mercedes forced Ms. Harewood to sit in a hallway to speak to parents, while other teachers were in their assigned rooms. Principal Mercedes continued to deny Ms. Harewood art supplies throughout the 2015-2016 school year.

**2016-17 School Year**

As of September 2016, Ms. Harewood had no plans to retire until June 2020, when her daughter would have finished college.  HH TR. 279, Baskin Decl. Ex. C. Principal Mercedes maintained that Ms. Harewood told him she planned to retire in September 2016 at the end of that school year, which Ms. Harewood disputes.  RM Tr. 154-155, Baskin Decl. Ex. E.  Regardless, over the months that followed in the 2016-2017 school year, Principal Mercedes created such a hostile work environment that forced Ms. Harewood to retire earlier than she wished.  When Ms. Harewood asked for a new storage space because her closet space was too small, Principal Mercedes ignored her request.  Ms. Harewood could not attend professional development with peers and was isolated the entire day in a room.

In or around January 2016, Ms. Harewood began working in the GEAR-UP after-school program through June 2016, which was pensionable per session income above her regular salary for teaching Humanities twice a week after school.  After securing this position for the 2016-17 school year, several weeks into the school year, without any explanation, she was denied the opportunity to work for the program after it was given to a Dominican social worker, Guillermin Ceballos, to run, and reassigned away from black AP Cinnamon Harris to supervise.  RM Tr. 186, Baskin Decl. Ex. E.  The program was unilaterally changed to a Saturday program in lieu of after-school program and Ms. Harewood was not offered an opportunity to work with the program. Email, Glass Decl. Ex. 27. On October 27, 2016, Ms. Harewood received an email informing her that she would no longer be eligible for the after-school program.  Ms. Harewood worked Tuesdays and Wednesdays in the GEAR-UP program from 2:30-4:30 pm earning $47 an hour from February 5, 2016- April 1, 2016, with Cinnamon Harris, the black AP.  The 2016-2017 GEAR-UP program,

which was run by Guillermin Ceballos, started in November 2016 on Saturdays. HH Tr. 201-205, Baskin Decl. Ex. C.

On February 1, 2017, Ms. Harewood received a new faculty schedule from the school administration.  On the new schedule, she was to pick up students from the lunchroom every day after her lunch.  According to Circular 1, it was the classroom teacher's responsibility to drop and pick up their class from preparation periods.  Younger Hispanic teachers, Michelle Cerritos and Alejandrina Bello, both sixth grade bilingual teachers, were not required to pick students up from lunch. In fact, Ms. Harewood was the only teacher required to do so. SAC ¶ 42, Baskin Decl. Ex. A.

Also beginning around Spring 2017, Ms. Harewood began receiving from administration less-than-effective evaluations and her first ever disciplinary letters to file threatening termination, in contrast to receiving consistently effective evaluations and having no disciplinary history in previous years. RM Tr. 196-197, Baskin Decl. Ex. E.

Ms. Harewood received her first ever less-than-effective observation report from defendant AP Varona on May 2, 2017, for an April 20, 2017 informal observation, directed by Principal Mercedes.  RM Tr. 136, Baskin Decl. Ex. E; Baskin Decl. Ex. V.  Ms. Varona previously had rated her effective on previous observations.  RM Tr. 162, Baskin Decl. Ex. E.  When she emailed AP Varona asking for feedback as to why she was rated less-than-effective—because the observation report itself contained no actual factual observations—Ms. Harewood received an email directing her to refer to the Danielson Rubric—which is 56 pages long—with no further specifics. Teachers are contractually required to have an initial and a post planning conference for an observation. Ms. Harewood received neither.

13

After sending emails and a certified letter to AP Varona and other DOE officials on May 11, 2017, asking about feedback for her April 20, 2017 observation, AP Varona never discussed the observation report with Ms. Harewood, but instead forwarded Ms. Harewood's emails to Principal Mercedes.   Baskin Decl. Ex. Y, Z, AA.  Ms. Harewood then started receiving letters from Principal Mercedes about fabricated allegations of verbal abuse. Principal Mercedes stated he reached out to NYCDOE legal to obtain assistance on emails sent to AP Varona.

On May 17, 2017, Ms. Harewood received her first-ever disciplinary letter to file based on false allegations of corporal punishment against her, shortly after sending the May 11, 2017 letter complaining about her unfair observation from AP Varona.  Baskin Decl. Ex. BB.  Notably, this investigation was conducted in house by Principal Mercedes.  The letter itself is riddled with falsities, including that a classroom teacher, Alejandrina Bello, whose class is on the other side of the building, witnessed the alleged altercation. Letter, Ex. 33; Statement, Ex. 34; audio recording, Ex. 35, Glass Decl.  Principal Mercedes also had another non-supervisor Susan Carr conduct investigations of Ms. Harewood even though Ms. Carr was not an administrator.  RM Tr. 140, Baskin Decl. Ex. E.

On May 19, 2017, upon arriving to her scheduled ICT class, Ms. Harewood was asked by Ms. Dreeban, the classroom math teacher, to collaborate her art lesson with the teacher's science lesson.  During the period, Ms. Dreeban worked with a small group of students, while the remainder of the class worked in small groups using laptops to do research for their science project. Ms. Harewood was walking around assisting students who were working on Ms. Dreeban's lesson plan as well as assisting students who were working on art posters.  Ms. Harewood helped with the layout of the posters and supplied the markers, crayons, watercolors and other materials for the art posters. Collaborative Lesson Plan, Glass Decl. Ex. 32. During this collaboration on May

19, 2017, Principal Mercedes did an informal observation of Ms. Harewood's teaching for the first time of the 2016-2017 school year. This only was the second time in 18 years that Ms. Harewood was observed by Principal Mercedes.  RM Tr. 28-29, Baskin Decl. Ex. E.

On May 23, 2017, Ms. Harewood received her written observation report from Principal Mercedes with ineffective ratings in five areas for the observation conducted on May 19, 2017. RM Tr. 133-134, Baskin Decl. Ex. E and W.  Principal Mercedes stated in the observation report that "he asked six students to provide him with the rationale of working on the science project in art class and students were unable to articulate a reason." Principal Mercedes also stated in his observation report, "The support of the classroom teacher did not provide added support to your class, for students working with the teacher worked on a science project. In the future avoid the competing interest. It takes away from instruction." Ms. Harewood was not competing with the classroom teacher; rather as educators they were collaborating to make connections between other disciplines.   This was the first time in 33 years that Ms. Harewood had ever been rated ineffective or unsatisfactory.  Notably, the lesson for which she was observed was a science lesson on which she had collaborated with the classroom science teacher, Amanda Dreeben, as a favor to the teacher.  Principal Mercedes had rated her highly effective in the past. RM Tr. 163, Baskin Decl. Ex. E.

Ms. Harewood was distraught from the observation report.    Ms. Harewood later confronted Ms. Dreeban about her motivation for staying in the room during her prep period, to which Ms. Dreeban did not respond.  Ms. Harewood's informal observation was sabotaged by the Dominican teacher, Amanda Dreeban, who did not support Ms. Harewood in telling Principal Mercedes that she had asked for Ms. Harewood's help with a science project during that period and not to teach art.

After complaining about her first observation of the 2016-2017 school year, Ms. Harewood was falsely accused of verbal abuse and other misconduct. Guidance counselor Susan Carr falsely let students write statements claiming she committed verbal abuse, and because Principal Mercedes claimed this verbal abuse was substantiated, he recommended OSI proceed with disciplinary charges to terminate her. Ms. Carr also falsely stated she was witness to a corporal punishment allegation against Ms. Harewood. Another Dominican staff member, Alejandrina Bello, a sixth-grade bilingual teacher, stated she also witnessed Ms. Harewood engage in corporal punishment, which was completely fabricated.

In May 2017, Principal Mercedes made a humiliating announcement over the school intercom for Ms. Harewood to return the elevator key, although Principal Mercedes knew she had a medical condition as justification to use the elevator. Ms. Harewood returned the key. RM Tr. 192, Baskin Decl. Ex. E.

After the elevator key was taken from her, Ms. Harewood's physical condition worsened. She was in constant pain, nervous, stressed, and depressed. Ms. Harewood had to use her back brace constantly, took muscle relaxants, and attended physical therapy. All the stress and anxiety created by Defendants forced her to take time off for fear of losing her job and sustaining a permanent back injury. Ms. Harewood witnessed the discriminatory and retaliatory behavior Principal Mercedes had exhibited towards many staff members who were asked to leave and did not leave, including Juanita Murray, Claire Scesney-Lundahl, and Linda White, all of whom were brought up on Section 3020-a charges, as well as Steve Bernstein who was forced to take medical leave, brought up on numerous false allegations, and threatened multiple times with Section 3020-a charges, and forced into retirement.

16

On June 28, 2017, after she had announced her retirement, Principal Mercedes issued Ms. Harewood an unwarranted disciplinary letter to file alleging verbal abuse by her on May 10, 2017. Baskin Decl. Ex. CC.  Notably, a disciplinary meeting had been scheduled for Ms. Harewood to meet with AP Varona on May 17, 2017, but was cancelled by AP Varona. When Ms. Harewood finally met with Principal Mercedes on June 22, 2017, regarding this allegation, he denied her the opportunity to have a copy of the allegations.

On May 25, 2017, based on a recommendation from her doctor, Ms. Harewood requested and took a leave of absence from May 28 until June 14, 2017, due to the stress she was experiencing from the conditions at her school.  RM Tr. 144, Baskin Decl. Ex. E.  Ms. Harewood additionally had to seek physical therapy due to injuries sustained to her back from wheeling the art supply cart up and down the stairs due to her elevator key being taken away her by Principal Mercedes. SAC ¶ 58, Baskin Decl. Ex. A.

Based on the ongoing abuse and mistreatment, Ms. Harewood decided on June 13, 2017, that it was best to retire before her recommended Section 3020-a disciplinary proceeding for false allegations was commenced against her.   Baskin Decl. Ex. B.  Ms. Harewood was having severe anxiety about possible assignment to the Absent Teacher Reserve and for fear of losing her job. Mr. Mercedes had his school secretary contact Ms. Harewood at home to secure her retirement papers.

In June 2017, Principal Mercedes's practice of targeting non-Dominican staff members continued. Principal Mercedes asked or forced several non-Dominican staff members to leave a few days before the end of the school year.  Staff members forced or asked to leave the school included Tyrike Saunders, Natasha Bruton, Alexis Carr, Elaine Blocker, and Kisha Rios Henry. Based on the harassment and discriminatory behavior of Principal Mercedes and his administration

towards her, Ms. Harewood retired at the end of the 2016-2017 school year. SAC ¶ 61, Baskin Decl. Ex. A.

Ms. Harewood dual filed a complaint with the New York State Division of Human Rights ("DHR") and the Equal Employment Opportunity Commission ("EEOC") based on age and race discrimination on or about July 11, 2017.  Baskin Decl. Ex. F.  She subsequently requested and received a right to sue letter from the EEOC dated April 12, 2018.   Baskin Decl. Ex. G.

After filing her complaint with the SDHR and EEOC, and Mr. Mercedes receiving notice that she was proceeding to federal court, on Saturday, May 12, 2018, Ms. Harewood received disciplinary notices from Principal Mercedes requesting her to come to the school for a meeting regarding an allegation of corporal punishment and professional misconduct, even though Ms. Harewood was retired at the end of the 2016-2017 school year.  RM Tr. 145-147, Baskin Decl. Ex. E.

## THE STANDARD FOR SUMMARY JUDGMENT

A moving party is entitled to summary judgment only when there is no genuine issue of any material fact.  *Feingold v. State of New York*, 366 F.3d 138, 148 (2d Cir. 2004).  As to any particular issues in which summary judgment is requested, where "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 67 (2d Cir. 2000).

The Second Circuit also has noted that an extra measure of caution is merited in granting or affirming summary judgment in a discrimination action because direct evidence of

discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions.  *McCowan v HSBC Bank USA, N.A.,* 689 F Supp 2d 390, 397-98 (E.D.N.Y. 2010), *citing Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir. 1994).

As set forth below and in Plaintiff's Responses to Defendants' Rule 56.1 Statement and Counter-Statement, to which the Court is referred for a detailed discussion of the facts giving rise to this action, the record in this case is replete with disputed issues of material fact, which if resolved in Ms. Harewood's favor, establish that Defendants violated Ms. Harewood's rights to be free from  discrimination and retaliation pursuant to the ADEA and Title VII.  Accordingly, Defendants' Motion for Summary Judgment should be denied.

**POINT I**

**MULTIPLE ADVERSE ACTIONS AGAINST MS. HAREWOOD ARE NOT TIME-BARRED AND A PATTERN OF PRIOR DISCRIMINATORY ACTIONS AGAINST HER DEMONSTRATE AN ONGOING HOSTILE WORK ENVIRONMENT BASED ON AGE AND RACE DISCRIMINATION.**

In their memorandum of law, Defendants concede that there are several adverse actions that timely fall within 300 days of the filing of Ms. Harewood's dual-filed age and race discrimination complaint after September 2016, including the taking away of her GEAR-UP program per session opportunity in November 2016, and other lost per session opportunities, as discussed in Point II below.  In addition, Ms. Harewood received a developing overall rating based on poorly rated observations and false several disciplinary letters to file in the spring of 2017, all threatening her with termination of her tenured employment.

Even if some of the other adverse actions against her are not timely on an individual basis and occurred before September 2016, the litany, multitude, and pattern of acts prior to the limitations period demonstrates the relentless hostile work environment Ms. Harewood was subjected to by Principal Mercedes and his administration, dating back to the 2013-2014 school year.   Prior to Principal Mercedes trying to remove her from the school (along with several other older black and white employees), she was always a Satisfactory, effective, or highly effective rated art teacher with no disciplinary history for more than 30 years of prior service at the very same school.

## POINT II

**THERE ARE MATERIAL ISSUES OF FACT THAT MS. HAREWOOD SUFFERED DISPARATE TREATMENT DUE TO RACE AND AGE DISCRIMINATION.**

### A.  Standard in Discrimination Cases for Disparate Treatment Claims

Discrimination claims under the ADEA are similar to those brought under Title VII, and are analyzed pursuant to the three-step, burden-shifting framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  *See DeMarco v. CooperVision, Inc.,* 369 F. App'x 254, 255 (2d Cir. 2010) (summary order); *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216-17 (2d Cir. 2005); *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400-01 (2d Cir. 1998).  Under this framework, a plaintiff can establish a *prima facie* case of age and/or race discrimination by showing that: (1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was subjected to an adverse employment action; and (4) the adverse employment action(s) took place under circumstances giving rise to an inference of unlawful discrimination.  *Kerzer,* 156 F.3d at 401.

A plaintiff can establish an inference of discrimination in a variety of ways, such as offensive or derogatory remarks made by the defendant; changes in a supervisor's attitude or treatment; or more favorable treatment of employees not in the protected group. *See, e.g., Quaratino v. Tiffany & Co.,* 71 F.3d 58, 65 (2d Cir. 1995); *Zambrano-Lamhaouhi v. N.Y.C. Bd. of Educ.,* 866 F. Supp. 2d 147, 170-71 (E.D.N.Y. 2011)*; Briggs v. Women in Need, Inc.,* 819 F. Supp. 2d 119, 128 (E.D.N.Y. 2011); *Sesay-Harrell v. N.Y.C. Dep't of Homeless Servs.,* 2013 U.S. Dist. LEXIS 170160, at *48 (S.D.N.Y. 2013).

If the plaintiff demonstrates a *prima facie* case, a presumption that the employer unlawfully discriminated against the employee is raised, and the burden of production then shifts to the employer to articulate a legitimate, clear, specific and non-discriminatory reason for taking adverse actions against the employee. *Kerzer,* 156 F.3d at 401. If the employer satisfies this burden, then the plaintiff must show by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination. *Id.* In the summary judgment context, a plaintiff can establish a genuine issue of material fact as to whether the employer's reason for the adverse employment action is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision. *Id.*

Under Title VII, Ms. Harewood need only show that race was a motivating factor for the adverse actions taken against her. *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989).

### B. Timely Adverse Actions and Disparate Treatment Based on Age and Race

Contrary to Defendants' arguments, Ms. Harewood did in fact suffer timely adverse actions for purposes of her discrimination claims. One timely adverse action she suffered with loss of income regarded the GEAR-UP program in November 2016. There was no application for this position. She had participated in the program the year before with retention rights to return. This caused her to lose pay of $47/hour. This adverse action resulting in loss of pay was timely within the applicable 300 day filing period from July 2017 when she dual filed her EEOC and SDHR complaint. Defendant Mercedes took the program away from an Assistant Principal Cinnamon Harris (who is black), who had selected Ms. Harewood for the program, and allowed the Hispanic guidance counselor Ms. Ceballos (Dominican) to take over and select her own staff for the program.

Another adverse action towards Ms. Harewood with an attendant loss of income included Principal Mercedes taking away her pensionable per session art portfolio work in the 2016-17 school year, which she previously had done every year.  RM Tr. 121, Baskin Decl. Ex. E.  As the only art teacher in the school, only Ms. Harewood did this work.  Principal Mercedes claimed he did not have the budget for this portfolio work, but yet spent thousands on per session for Hispanic staff members Ms. Pou and Ms. Ceballos, who made $20,000 in overtime.  *See SEE THROUGH NY DATA,* Glass Decl. Ex. 48.  This disparate treatment regarding distribution of per session work raises material issues of fact for trial.

Principal Mercedes also obfuscated throughout his deposition about budgetary issues regarding Ms. Harewood's arts allocation.  Principal Mercedes was using the allocation for the art teacher at the school and diverted money away to his Hispanic cronies.  Principal Mercedes mixed up programs and used money allocated to arts programs, who were Hispanic staff members in the school.  The $1200 referenced from an outside arts program. $1000 came from Art Studio funding; it was $1200 for the 2016-17 school year.   Principal Mercedes allocated the arts budget funding to other staff members at the school.

Other evidence leading to an inference of discrimination includes that Ms. Harewood had essentially a flawless career for 33 years as an art teacher, until Principal Mercedes and AP Varona, under his supervision, issued Ms. Harewood poor ratings and disciplinary letters threatening her termination only starting in the late spring of 2017.  RM Tr. 22, Baskin Decl. Ex. E.  Prior to that, Ms. Harewood had been rated highly effective by Principal Mercedes and had no disciplinary letters to file.

In addition, Principal Mercedes ultimately replaced Ms. Harewood with Ms. Soriano as an art teacher, who was a first-year probationary Latino art teacher in her early 20s.  Ms. Soriano

started to work as the art teacher in the school in September 2017, immediately after Ms. Harewood retired in June 2017, at a much lower salary on Principal Mercedes's budget.  RM Tr. 16, 43, Baskin Decl. Ex. E.  In addition, Ms. Maire, the music teacher who also is younger than Ms. Harewood and Hispanic, maintained her own classroom while Ms. Harewood was forced to travel throughout the school without a permanent classroom, and Ms. Maire was given Arts Matters funding that Ms. Harewood did not receive.  RM Tr. 20, 66, Baskin Decl. Ex. E.

Principal Mercedes's school secretary also sought to expedite Ms. Harewood's retirement papers while Ms. Harewood was on medical leave in June 2017, by reaching out to her at home to ensure she submitted her retirement papers, and further ensured that funds be released back to his school immediately after Ms. Harewood retired.  Glass Decl. Ex. 49.  Even after she did so and told her not to worry about any open investigations at their final meeting in late June 2017 before Ms. Harewood retired, Principal Mercedes intimidated her further from reconsidering retirement by continuing disciplinary investigations in 2018 against her even after she left the school. Principal  Mercedes acknowledged that Ms. Harewood was the most senior and highest paid teacher in the school at the time she retired, with her salary clearly listed on her 2016-17 rating sheet.  RM Tr. 39-40, Baskin Decl. Ex. E.

Principal Mercedes also took away a permanent classroom from Ms. Harewood in June 2015, Baskin Decl. Ex. N and O, and effectively made her a nomad in the school for her last two years starting in the 2015-2016 school year, which caused her physical injuries to her back when she was also denied access to the school elevator, and he also took the key card to the elevator away from her in May 2017.  Principal Mercedes never gave the key card back nor did he tell her of any alternative access to this elevator, and she was denied access to the elevator again until she retired.  In contrast, Hispanic staff members Pedro Reyes and Mr. Alvarez kept their key cards

even after Principal Mercedes' announcement to return the key cards in May 2017.  HH Tr. 254-255, Baskin Decl. Ex. C.

Consequently, Ms. Harewood suffered numerous adverse actions in which an inference of age and race discrimination can be drawn, that raise material issues of fact for trial.

### C.  There Are Material Issues of Fact As To Whether Defendants Had Legitimate Non-Discriminatory Reasons For Their Actions Or Their Actions Were A Pretext For Age and Race Discrimination.

Ms. Harewood also disputes Defendants' contention that her performance was unsatisfactory or that she engaged in misconduct worthy of discipline in her final semester in the 2016-17 school year.  In support of their contention, Defendants rely on self-serving documents initiated and created by Principal Mercedes and his administration.  Each of these documents are naturally subjective and constituted school-based investigations launched and/or orchestrated by Principal Mercedes.  RM Tr. 130, Baskin Decl. Ex. E.  As Ms. Harewood has disputed the allegations and conclusions contained in these documents, there are material issues of fact as to whether Defendants had legitimate non-discriminatory reasons for their actions or their actions against her were a pretext for discrimination. Indeed, Principal Mercedes used his discretionary tools as weapons at his disposal to put Ms. Harewood in a position not to succeed and to ultimately remove from the school, which was a tried and tested formula he had followed successfully with many older teachers before he targeted Ms. Harewood.

## POINT III

**MS. HAREWOOD WAS SUBJECT TO A RELENTLESS HOSTILE WORK
ENVIRONMENT SIMILAR TO HER OLDER NON-HISPANIC COLLEAGUES
WHICH LED TO HER CONSTRUCTIVE DISCHARGE AND PREMATURE
RETIREMENT AT LEAST THREE YEARS EARLIER THAN SHE HAD PLANNED TO
WORK FOR THE NYCDOE.**

In her last school year after 33 years of employment as a discipline-free art teacher at the
MS 390 building, Principal Mercedes subjected Ms. Harewood to a barrage of disciplinary letters
and poorly rated observations late in the 2016-17 school year.  This caused Ms. Harewood so much
stress that she took a leave of absence in May and June 2017 before she decided to retire.  She
never had poor observations or ineffective ratings until late 2017, despite 30-plus years of
discipline free and satisfactory performance.

Not only did Principal Mercedes build such a negative derogatory file against Ms.
Harewood, but he did it to numerous other older and non-Hispanic staff members as well, including
Juanita Murray and Steven Bernstein, who also had or have pending discrimination lawsuits
against Principal Mercedes.   *See Murray v. NYCDOE*, 15 CV 3191 (EDNY), *Bernstein v.
NYCDOE*, 19 Civ. 11816 (SDNY).  Principal Mercedes also engaged in the same *modus operandi*
against numerous other older non-Hispanic pedagogues who he had asked to leave the school,
including but not limited to Tiffany Mack,  Christina Gianafrancesco, Bari Martinilli, Elaine
Blocker, Tyrike Saunders, Natasha Bruton, Alexis Carr, Keisha Rios Henry, George Swander,
Myrna Kinkle, Meaghan Canavan, Linda White, Claire Scesney-Lundahl, Juanita Murray, Steve
Bernstein, and Darryl Mcknight, and which is not even disputed by Defendants in their motion.

Any reasonable person targeted relentlessly with threatened 3020-a charges would feel
pressured to resign and effectively be constructively discharged under the circumstances.  It is not
credible that Defendants would suggest a high salaried art teacher easily could transfer schools or

26

had any other alternative other than have her record ruined with 3020-a charges.  When eligible for retirement, teachers such as Ms. Harewood, as well as Mr. Bernstein and Ms. Murray, could only tolerate so much abuse from Principal Mercedes and eventually decided to walk away from their tenured employment for preservation of their own physical and mental health.  The fact that Ms. Harewood took a leave of absence due to stress in late May 2017 shows how poorly Principal Mercedes had treated her in an effort to constructively discharge her from his school.

In sum, Principal Mercedes used the same playbook towards Ms. Harewood as he did towards other older non-Latino tenured faculty who he wanted to remove from his school –*e.g.*, Linda White, Steve Bernstein, Darryl McKnight, Juanita Murray, Claire Scesney-Lundahl –and relentlessly subject long term discipline-free satisfactory pedagogues to a hostile work environment littered with false disciplinary allegations and letters to file and threats of 3020-a charges and essentially constructively discharge them from his school.


**POINT IV**

**SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR RETALIATION SHOULD BE DENIED.**


For a plaintiff to state a claim for retaliation, a plaintiff must prove that (1) she engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010).  To qualify as an adverse employment action for a retaliation claim, the act must be one "that could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington Northern & Santa Fe Railway v. White*, 543 U.S. 53 (2006). It is widely accepted that a negative evaluation or reprimand is considered an adverse employment

action if it is accompanied by an adverse result such as "demotion, diminution of wages, or other tangible loss." *Browne v. City Univ. of New York,* 419 F.Supp.2d 315, 322 (E.D.N.Y. 2005), *aff'd sub nom., Browne v. Queens Coll. City Univ. of New York,* 202 F. App'x 423 (2d Cir. 2006) (collecting cases); *see also  Demoret v. Zegarelli,* 451 F.3d 140, 151 (2d Cir. 2006) (preventing plaintiff from earning overtime and comp time and requiring only the plaintiff to request overtime in writing may constitute adverse employment action); *Herling v. N.Y.C. Dep't of Educ.,* No. 13-cv-5287, 2014 U.S. Dist. LEXIS 56442 (E.D.N.Y. Apr. 23, 2014) ("Denying an employee the opportunity to work overtime, comp time, or additional per-session employment may . . . constitute an adverse employment action.")

Ms. Harewood filed an SDHR/EEOC administrative charge on July 11, 2017.  After she filed the charge, she received disciplinary notices in May 2018 for corporal punishment and professional misconduct, even though he told her in June 2017 that all the cases were closed and nothing would be pending against her.  These are adverse actions that would dissuade a reasonable employee under the lesser retaliation standard for adverse actions.  *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 226 (2d Cir. 2006).  Disciplinary letters issued by the New York City Department of Education have been found to constitute adverse employment actions. *See, e.g., Thompson v. City of N.Y.,* 2002 U.S. Dist. LEXIS 23675, at *17 (S.D.N.Y. Dec. 6, 2002); *Fahmy v. Duane Reade, Inc.,* No. 04-CV-1798, 2006 U.S. Dist. LEXIS 37703, 2006 WL 1582084, at *10 (S.D.N.Y. June 9, 2006).   Consequently, there are material issues of fact on Ms. Harewood's retaliation claims regarding the disciplinary investigations continued after she retired, even after Principal Mercedes told her on the last day of school that no disciplinary allegations were pending against her. RM Tr. 203, Baskin Decl. Ex. E;  RM Ex 31, Glass Decl. Ex. 50; RM Ex. 32, Glass. Decl. Ex. 51.

## CONCLUSION

For the foregoing reasons, Plaintiff Harriet Harewood respectfully requests that the Court deny Defendants' motion for summary judgment in its entirety and allow the case to proceed to trial on all material factual issues.

Dated:      New York, New York
             June 30, 2020

**GLASS HARLOW & HOGROGIAN LLP**
Attorneys for Plaintiff Harriet Harewood
One Blue Hill Plaza, #1509
Pearl River, NY 10965
(212) 537-6859

By: _____s/_____
      Bryan D. Glass, Esq.